THOMAS KANE & Co., Appellants, v. INDEPENDENT SCHOOL DISTRICT OF ROCK RAPIDS *et al.*, Appellees.

82 5
86 339
82 5
92 680

82 5
98 583
98 646

Municipal Corporations: INDEBTEDNESS IN EXCESS OF LIMITATION: JUDGMENT: VALIDITY. The directors of a school district, the indebtedness of which already exceeded that allowed by the constitutional limitation, contracted an indebtedness with the plaintiffs, and afterwards, through collusion, permitted them to obtain judgment therefor against the school district. Upon proceedings to compel the defendants to levy taxes for the payment of such judgment, *held*, that the judgment was of no validity against the district, and could not be enforced.

*Appeal from Lyon District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

TUESDAY, JANUARY 27, 1891.

THIS is an action of *mandamus*, by which it is sought to compel the defendants to levy taxes to pay a certain judgment which the plaintiff recovered against the defendant, the independent school district of Rock Rapids. After the judgment was recovered, the territory composing said district was divided into several districts, and it is claimed that each district should levy a tax and pay its proportionate share of the judgment. The defendants, by answer, admitted the rendition of the judgment, but averred that the same is void, because the debt upon which it was rendered was contracted at a time when said district was indebted in excess of the limit authorized by the constitution, and that for that reason the court rendering the judgment had no jurisdiction to render the same. It is also averred that the judgment was procured by fraud and collusion with the members of the board of directors; and by way of a cross-bill it is prayed that the judgment be canceled, and declared null and void. There was a hearing upon these issues, and a decree was

entered for the defendants as prayed in the cross-bill. The plaintiffs appeal.—*Affirmed.*

*E. G. Greenleaf* and *Cummins & Wright*, for appellants.

*E. C. Roach* and *Van Wagenen & McMillen*, for appellees.

ROTHROCK, J.—There is no direct evidence upon which to base a finding that the judgment was procured by collusion between the plaintiffs and the directors of the district. But the court correctly found from the evidence that, at the time the order was reissued, the valuation of the taxable property, as shown by preceding state and county tax lists, was eighty-eight thousand, nine hundred and three dollars, and the district was indebted in the sum of forty thousand dollars, and had no assets, and that it continued in debt in said sum until after the issuing of the warrant for the payment of the judgment. It also appears from the evidence that the debt now in controversy was contracted for seats for use in the schoolhouse belonging to the district. The limit of lawful indebtedness at that time did not exceed forty-five hundred dollars. Any indebtedness in excess of that amount was illegal and void. Const., art. 11, sec. 3. When this debt was contracted the directors had no lawful authority to create any valid debt against the district. In attempting to do so they not only violated their official oaths, but they surely must have intended to violate the constitution and the law. The contract for the seats was made by one Green, who was the agent of the plaintiffs in the sale of the seats. He knew when he made the sale that the contract was void. But it is wholly immaterial whether he knew the amount of the indebtedness or not. A party who becomes the creditor of a municipal corporation must, at his peril, take notice of the fact that its indebtedness is in excess of the constitutional limitation. *French v. City of Burlington*, 42 Iowa, 614.

It further appears in the evidence, that, when the original notice of the action for a judgment upon the warrant was served upon the board of directors, they purposely and intentionally failed to appear and defend, and allowed judgment to be entered by default. A default in making an appearance and defending an action operates as an admission of the cause of action as averred in the petition, and that the plaintiff is entitled to judgment in some amount; and where the suit is upon an instrument for a definite sum of money no evidence is necessary upon the amount of damages. The default made by the directors was, therefore, an admission that the district was legally indebted to the plaintiffs in the sum of the order and interest. We have said that there is no direct evidence of collusion between the plaintiffs and the directors; that is, the evidence does not show that the plaintiffs and the directors held a meeting, and made a compact or agreement that the plaintiffs should commence an action upon the illegal claim, and that the directors should make no appearance, and thus enable the plaintiffs to enforce a void obligation against the district. But fraud and collusion are not required to be shown by direct evidence. It may be proved by facts and circumstances, and, in our opinion, the evidence in this case shows that both of the parties to that action intended that the plaintiffs should recover judgment.

Having found that the judgment was a fraud upon the district, the next question to be determined is, can the district be relieved from the payment of the judgment? It is true as a general proposition, as claimed by counsel for appellant, that it cannot be said that the court did not have jurisdiction to render the judgment. It had jurisdiction of the subject-matter of the suit; that is, it had jurisdiction to render judgment on a money demand, and by the service of process it had jurisdiction of the parties; and if this were a judgment against a private person it may be that, under the facts, it should be held valid. But the school district is the real party. The directors are the trustees or managers

of its affairs. The real parties in interest are the tax-payers of the district. It appears that these agents or officers of the district had attempted to involve it in debts to the amount of nearly fifty per cent. of the assessed valuation of its taxable property, and, to make these fraudulent obligations more binding, the directors deliberately and solemnly determined at a meeting of the board that they would not appear to the action, but allow judgment to be entered by default. An examination of the case of *Ind. Dist. v. Schreiner*, 46 Iowa, 172, will show some of the methods adopted by officers of a previous board in this same district. No question was made in that case that it was competent for the district to attack the judgment for fraud, and the judgment was set aside on that ground. In the case of *Kelly v. Town of Milan*, 127 U. S. 139; 8 Sup. Ct. Rep. 1101, the municipal authorities of a city brought suit to enjoin perpetually the collection of certain municipal bonds, on the ground that they were issued without authority of law. By consent of the parties, it was ordered that the preliminary injunction be dissolved, and the cause was disposed of by a compromise, by which it was agreed that the town, for a certain consideration, should let a decree be entered in favor of the validity of the bonds, and the decree was so entered. It was held that, as the bonds were invalid, the officers of the town had no greater power to agree to an entry of judgment declaring their validity than they had to issue the bonds originally, and that the judgment entered by consent did not estop the town, in a subsequent action upon the bonds, from pleading the invalidity of their issue. Inasmuch as we have found that the facts in this case justify the finding that the judgment was rendered by the tacit consent of the members of the board then in office, the case above cited would appear to sustain us in holding that this judgment is not one of those solemn adjudications which should be recognized and binding upon the parties.

It is to be remembered that, in every case determined by a court of last resort, it is important to consider

the consequences which must necessarily follow the decision rendered. It is a matter of common knowledge in this state that many of our cities have contracted debts to the extent of the constitutional limitation; and in one city there was a time when its business was transacted under the restraint of an injunction forbidding the contracting of additional indebtedness. If we were to sanction judgments like the one obtained in this case, it would be a license to officers of municipal corporations to incur any indebtedness in any amount, and then allow judgments by default, and thus defeat and override the constitutional limitation. It is requiring rather too much vigilance on the part of the taxpayer to require him to be in attendance in the clerk's office, and in the courts, and upon the meetings of the city councils, that he may know whether the indebtedness contracted is valid, and enjoin such actions. The records of this court are full of instances of the malfeasance of officers of municipal corporations. We have repeatedly held that officers of these corporations have no power to contract debts except such as are authorized by law, and in the face of these rulings, and in defiance of the constitution and the statute, the unlawful acts are continued, upon the ground that they are for the public good. We know of no effectual method of correcting these wrongs, except by a resort by the taxpayers to the criminal law to protect themselves from robbery by the maladministration of officers of these corporations. There is nothing in the views herein expressed inconsistent with the case of *Railroad v. Osceola Co.*, 45 Iowa, 168. That was an action upon negotiable judgment bonds by an innocent holder for value.

The decree of the district court is AFFIRMED.