INDEPENDENT DISTRICT OF ROCK RAPIDS *et al.*, Appellants, v. MILLER & THOMPSON *et al.*; SAME, Appellants, v. THE BANK OF ROCK RAPIDS *et al.*

**Plea and Proof.** School orders were issued, fraudulently, above the constitutional limit, to the knowledge of the payees. Subsequently, a "reform" board was chosen. Suits were begun upon notice to its president and default suffered through the unanimous decision of that board to make no defense. Nothing appears to show that any member of the board knew that said suits were in contemplation before

they were actually begun or that payees knew in advance that no defense would be made. *Held,* that a petition to enjoin the default judgment was rightly dismissed, and that said evidence did not sustain the allegation of the petition "that with full knowledge of these facts aforesaid, and relying upon the lack of opposition of the said board and with an understanding that no defense would be made to their suits when brought by said board, they brought suit upon their orders and obtained judgment against said district by default in violation of the constitution and laws of the state of Iowa."

*Appeal from Lyon District Court.*—HON. SCOTT M. LADD, Judge.

SATURDAY, DECEMBER 15, 1894.

THE above entitled actions were brought to enjoin the collection of certain judgments in Lyon county, Iowa, and for a decree canceling the same of record. By a stipulation the two causes were consolidated and tried in the district court as cause number 958. In each of the cases W. F. Stilwell *et al.*, intervened, and the district court dismissed the petitions of the plaintiffs and interveners, and they each appealed.—*Affirmed.*

*McMillan & Dunlap* for appellants.

*J. M. Parsons* for appellees.

. GRANGER, C. J.—From 1881 to 1884 the defendants in the cases under consideration obtained judgments in the district and circuit courts of Lyon county upon school orders issued by the independent district of Rock Rapids. This district has since been so divided that its former territory now constitutes four other independent districts, all of which are coplaintiffs, and interested because of their proportionate liability for the judgments, if valid. The orders upon which the judgments were entered were issued when the indebtedness of the then district was largely in excess of the constitutional limitation of five per cent upon the

assessed valuation,—the valuation being about ninety thousand dollars, and the indebtedness something more than forty-four thousand dollars. It is averred (and the evidence sustains the conclusion) that for the years preceding 1883 the affairs of the district were extravagantly, and in some respects we might say corruptly, managed. A ground upon which plaintiffs seek a cancellation of the judgments is that they were obtained by collusion between the board of directors of the district and the defendants; and, after specifying the particulars as to the practices of the board in issuing orders in excess of the legal limit, it is said "that with full knowledge of all these facts aforesaid, and relying upon the lack of opposition of the board of directors of said district, and with an understanding that no defense would be made to their suits, when brought, by said board, they brought suits upon their orders, and obtained judgment against said district by default, in violation of the constitution and laws of the state of Iowa." The interveners unite with the plaintiffs, and make further allegations as to the consequences to result to them and other taxpayers of the district unless the judgments are canceled or their collection enjoined; and to this end they make averments as to the assignment of the judgments and proceedings for their enforcement in state and federal courts, and that the judgments are liens and clouds upon their titles. If we eliminate from the petitions the claim that the judgments were fraudulently or collusively obtained, the remaining averments would not entitle the parties to the relief claimed. If, then, the proofs are not such that we may find that there was a collusion, there is no basis for a decree as prayed. With a careful examination of the record we conclude that the conclusion of the district court is right. The record not only fails to establish collusion, but it is practically an affirmative showing of no collusion.

Just prior to the commencement of these suits there had been an election of members of the school board, and three new members had been elected as "reform" members. The practices of the old board had awakened a strong feeling in the district, and a change was made to prevent further abuses; and it does not appear that after this change there was complaint, or any ground for it. If there was collusion as to these cases, this new board was a party to it, and not only the new board, but the new members. Mr. E. C. Roach was one of the new members, and at once made president of the board, and was such when these suits were commenced. He is a witness for plaintiffs, and his testimony is important. While there is not a word of evidence to show that these plaintiffs ever talked with the board, or a member of it, in regard to putting their orders in judgments, it quite affirmatively appears that they never did.

There were other claims, and among them one of Thomas Kane & Company, to which the attention of the board was called, and which led to some talk about orders being put in judgment, and their not being paid by the treasurer, but nothing directly or indirectly as to the claims of these defendants in particular. It is to be said that it does not appear that the board, or any member of it, before these defendants commenced their suits, knew that such suits were contemplated, nor does it appear that these defendants (then plaintiffs) after these suits were commenced, and before default was taken, knew, or were in any way informed, but that a defense would be made. There is evidence tending to show that at the appearance term Mr. Roach appeared for the board to the extent of taking time to plead, and afterward permitted a judgment by default. The following are the concluding words of the testimony of Mr. Roach, and no one questions his sincerity or integrity as a member of the

board: "At the time notice was served upon me of
the suits by the bank of Rock Rapids and Miller &
Thompson, upon which the judgments in controversy
in this suit were obtained, the matter was brought
before the board by me as president, and the board
talked it over, and it was agreed *by all of the board* that
we would make no defense to the suit, and let the par-
ties take judgment." The italics are ours to indicate
the unanimity of sentiment on the board at the time
the suits were pending, and the board, as then consti-
tuted, is manifestly free from the imputation of extrav-
agance or corruption. Appellants' principal argument
as to the sufficiency of the evidence to sustain the aver-
ments of the petition is a reference to the case of *Kane
v. Independent School District*, 82 Iowa, 5, 47 N. W.
Rep. 1076, in which we affirmed the action of the court
below in setting aside a judgment on similar orders;
and it is said that the evidence in this case is substan-
tially the same, or even stronger, in favor of plaintiffs.

The statement is not warranted in respect to the
particular issue under consideration. There is
much and strong testimony as to the fraudulent
issue of warrants, about which there is no real ques-
tion, and of the knowledge of defendants of these prac-
tices, and of their attempts to collect orders held by
them; but this does not show collusion, without which
the judgments are valid. It is true that the evidence
in the two cases, in most particulars, is much alike,
and yet it is essentially different in its force and effect
to justify the inference of an understanding whereby a
defense should not be made. It will be seen, in that
case, that we went to the full limit of discretion upon
the question of fact, because of the fraudulent incep-
tion of the indebtedness, and the peculiar situation of
the real parties in interest. Without a too extended
quotation from evidence, we can not indicate the par-
ticulars to show the difference between the cases; but,

as showing the convincing force of the evidence in the two cases, it is somewhat significant that in the *Kane* case the conclusions of the district court and this court were the same, while in this case the district court refused the relief prayed; and we may assume that it was upon the theory of our conclusion. It could not well be otherwise, for, as we have said, the plaintiffs' evidence really shows that there was no collusion. It refutes the facts from which, in the *Kane* case, the inferences of collusion were drawn, that destroyed the solemnity of the adjudication between the parties. Some motions came to us with the case, which, in view of our conclusion, it is unnecessary to consider. Therefore, the judgment is AFFIRMED.