J. D. EDMUNDSON V. THE INDEPENDENT SCHOOL DISTRICT
    OF JACKSON, THE INDEPENDENT SCHOOL DISTRICT
    OF ALLISON, IN LYON COUNTY, IOWA, and SCHOOL
    BOARDS OF SAID INDEPENDENT DISTRICTS, *et al.*,
    Appellants.

**Constitutional Law:** MUNICIPAL DEBT. The obtaining of a judgment against a school district, is not the creation of a debt against it, within Constitution, article 11, section 3, fixing its limit of indebtedness.

**Collateral Attack:** JUDGMENT ON MUNICIPAL DEBT. A judgment against a school district cannot be collaterally attacked on the ground that the debt upon which the judgment was rendered was in excess of the constitutional limitation, as such excess was a matter of defense, which should have been interposed in the suit in which the judgment was obtained.

SAME: *Fraud.* A judgment against a school district, obtained without fraud, cannot be collaterally impeached in a proceeding by mandamus, to compel the levy of a tax to raise the same, on the ground that an affirmance thereof, on appeal, was obtained collusively, especially where no steps were taken until more than nine years after the alleged collusion was discovered. The remedy was by timely proceeding to set aside the order of affirmance.

*Appeal from Lyon District Court.*—HON. JOHN F. OLI-
VER, Judge.

FRIDAY, MAY 29, 1896.

ACTION of mandamus to compel the defendants, as officers of the school districts named, to levy a tax to satisfy a judgment in favor of plaintiff against the independent school districts of Riverside, rendered on the fourth day of August, 1885. The defendants pleaded that plaintiff's judgment was obtained by fraud and collusion with the officers of the school district, and that it is in excess of the constitutional limit of indebtedness which municipal corporations may incur. The case was tried to the court, resulting in a

judgment and order for plaintiff as prayed. Defendants appeal.—*Affirmed.*

*McMillan & Dunlap* for appellants.

*E. C. Roach* for appellee.

DEEMER, J.—In the spring of the year 1872, the independent district of Riverside, in Lyon county, was organized as a school district and continued as such until the spring of 1885, when the independent school district of Allison and the independent school district of Jackson were carved out of the territory theretofore known as the Riverside district. The affairs of the school district of Riverside were very corruptly, extravagantly, and perniciously managed. At the time plaintiff recovered the judgment hereinafter referred to, the assessed valuation of all the property within the district was eighty-four thousand two hundred and ninety-eight dollars, and the amount of the outstanding indebtedness against it was fifty thousand dollars. The largest amount of indebtedness it could legally incur under the constitutional limitation was four thousand two hundred and fourteen dollars. In the year 1882, and for some time prior thereto, one Skartvedt was the owner of certain real estate situate within the school district of Riverside. Taxes were levied and assessed against the property, which he neglected and refused to pay, and his land was sold for taxes. Miller and Thompson, and plaintiff, Edmundson, purchased the land at tax sale, and at or about the time of the expiration of the period of redemption were proceeding to obtain a treasurer's deed for the land. Skartvedt thereupon brought suit against the school district, the purchasers at the tax sale, the county of Lyon, and the then treasurer thereof, to enjoin and restrain the execution

of the tax deed.   Edmundson, and Miller, and Thompson appeared and filed an answer and cross-bill against their co-defendant, the school district.   The suit was based upon the claim that the taxes were excessive and illegal, and that they were levied to pay a debt in excess of the constitutional limitation of five per cent. on the assessed valuation of the property within the district.   The independent district affirmed the validity of the tax and of the indebtedness.   The defendant, Edmundson, also affirmed the validity of the tax and of the indebtedness, and asked to have the amount he paid at tax sale made a lien upon the land. He further pleaded that the indebtedness for which the levies were made, was in the form of negotiable bonds, which were in the hands of innocent purchasers.   In his cross-bill against the school district, he pleaded the sale of the land to him under levies made by the district, the payment of large sums by him at the sales, and prayed that, in the event it should be held the taxes were not a lien upon the Skartvedt land, he should have judgment against the independent district for all sums which were held to be illegal, and not a lien upon the land, as for money had and received.   The independent district, in its answer to the cross-bill, denied all liability to Edmundson.   It will thus be seen that the validity of the tax assessed against the land of Skartvedt was in issue between all the parties.   Upon a trial of the case upon the issues thus joined, the court found that the taxes were not a lien upon the land, and enjoined and restrained the collection thereof.   It also granted the injunction against the treasurer of the county, and gave Edmundson a judgment for the sums he paid at the tax sales, amounting in all to the sum of two hundred and twenty dollars and eighteen cents.   This judgment and dercee was rendered on the fourteenth day of August, 1885.   The case at bar

is an action of mandamus to compel the officers of the two school districts named to levy and collect a tax for the satisfaction of the judgment obtained by Edmundson in the prior proceedings. The defendants' answer to the petition filed in this case pleaded that plaintiff's judgment was obtained through fraud and collusion with the board of directors of the Riverside district; and they further pleaded that the judgment was rendered in violation of law and the constitution of the state, which was well known to the plaintiff and the officers of the school district, but that they wrongfully and fraudulently entered into a collusive agreement by which all knowledge thereof was kept from this court, to which an appeal of the original case was taken, for the purpose of evading the constitution and the laws of the state; and that in pursuance of said fraudulent agreement the appeal of the school district taken in the original case was dismissed. The case went to trial on these issues with the result already stated.

The following stipulations and agreements were entered into, between the parties, at the commencement of the trial in the lower court: "It is admitted of record, that the independent dictrict of Jackson, and the independent district of Allison, now compose the territory formerly composing the old independent district of Riverside, the defendant in the judgment of J. D. Edmundson, against the independent district of Riverside. It is admitted that the independent district of Allison, and the independent district of Jackson, were organized in the spring of 1885, out of the old independent district of Riverside. It is agreed as part of the testimony in said case, that if any indebtedness of the old independent district of Riverside exists, for which the defendant districts herein are liable, the said independent district of Allison is liable for two-thirds thereof, and the independent district of

Jackson one-third thereof." Now, while the defendants in this case have pleaded that the judgment procured by plaintiff in the original case was obtained by fraud and collusion, yet the evidence does not bear out their plea, and it is not relied upon here. It appears, however, that an appeal was taken from the original judgment and decree, to this court, and that this appeal was dismissed, on motion of the plaintiff therein, on the eleventh day of January, 1887. The real contention is that plaintiff herein, and the officers of the school district of Riverside, conspired and colluded together to secure the dismissal of the appeal, and that the appeal was dismissed, and the judgment affirmed, because of their corrupt agreement.

There are but two questions of law presented by counsel on this appeal. The first is, can plaintiff's judgment be impeached in this proceeding by reason of the alleged fraud in procuring the affirmance of the decree in this court? And the second is, can the judgment be impeached because of the fact that at the time it was obtained the school district was in debt largely in excess of the constitutional limit? A third question in this case is one of fact, and it relates to the sufficiency of the evidence to establish the alleged fraud and collusion. We have seen that there is no claim that the original judgment and decree was obtained through fraud. There seems to have been a determined and vigorous contest over the questions presented, which finally resulted in the judgment and decree referred to. The attorneys for the school district almost immediately gave notice of appeal. Some time after the appeal was taken, a motion to dismiss was filed by Skartvedt. This motion was sustained. Within five or six weeks after the ruling on this motion, the attorneys for the school district learned of the affirmance, and they thereupon filed a motion to

set aside the order. This motion was also sustained, and they were given leave to file an abstract. Appellants did not then file their abstract, and appellee (Skartvedt) again moved to dismiss the appeal, and his second motion was sustained. As we understand it, this motion was sustained on the theory that the appeal was not authorized by the officers of the school district. Within a few weeks after the final order was made, appellants' counsel received notice thereof, and they thereupon consulted with the officers of the school district, and learned that they did not desire to prosecute the appeal. After receiving this information, they made no further efforts to reinstate the case. There is no evidence whatever that Edmundson had anything to do with the proceedings in this court. On the contrary, it affirmatively appears that neither he nor his attorney had anything to do with procuring the affirmance of the judgment. It was affirmed before either of them knew that any steps were being taken in that direction. The proceedings were all had without reference to Edmundson or his attorney. It seems to us quite clear that there is not sufficient evidence of fraud or collusion to justify a court in setting aside the order of affirmance. But if it should be conceded that the evidence is sufficient, it does not follow that this defense is available in this case.

Both the district and this court had jurisdiction of the parties and the subject-matter. The affirmance of the judgment, even if had by reason of collusion between the parties, would not be void, unless made to avoid the constitutional provision. Such fact, if established, would be good ground for timely proceedings in this court to set the order of affirmance aside, but would not justify a collateral attack upon the judgment. Moreover, if it did not afford ground for relief, the appellants were

required to act with reasonable promptness. They could not sit idly by and wait for years, and until the plaintiff attempted to enforce his judgment, and then come in and ask that it be set aside. It is a time-honored and salutary rule that when one is defrauded by the conduct or act of another, he must, within a reasonable time after the discovery of the fraud, proceed to have the matter corrected. If he does not do so, he is held to have acquiesced therein. In this case the defendants and the districts which they represent knew of the alleged fraud within a few weeks after it was consummated, and yet took no steps to correct the results obtained by the fraud until more than nine years after it was consummated. And when they do act they attempt to accomplish it in a collateral proceeding by interposing a defense to the enforcement of the judgment. As we have already said, the judgment was in no event void. At most, it was simply voidable; and it is elementary that such a judgment cannot be collaterally attacked. The case of *Independent District of Rock Rapids v. Miller*, 92 Iowa, 676 (61 N. W. Rep. 376), is in some respects much like the case at bar. Miller and Thompson, the defendants in that case, are the Miller and Thompson referred to in the earlier part of this opinion.

II.   It is contended, that the judgment in favor of Edmundson is void, because it creates an indebtedness against the school district in excess of the limitation fixed by the constitution (section 3, article 11) upon the indebtedness of municipal and political corporations. This contention is based upon the thought, that the obtaining of the judgment was the creation of the debt. Manifestly, this is not true. The judgment is simply evidence—conclusive evidence—of a pre-existing debt, which had been created prior to the time the court rendering it was called upon to act. If the indebtedness, which had

previously been created, was in excess of the constitutional limit, this was a matter which the defendants should have pleaded in defense to the action brought to recover the amount due. The constitutional provision is not self-executing or self-enforcing. It is purely a matter of defense to recovery upon a contract, which creates a debt in excess of the limitation provided; and if not interposed at the proper time, and in a legal manner, it is waived. We do not mean to hold, that the officers of such a corporation may, fraudulently or collusively, permit judgments to be rendered against the municipalities which they represent, which will be conclusive upon the corporation. Nor are we prepared to hold, that a judgment so obtained cannot be successfully assailed. What we do say is that, as applied to the facts of this case, the judgment, which is the foundation of this suit, cannot be collaterally attacked, because of the fact, that the indebtedness upon which it is founded, was in excess of the constitutional limit. It appears, that the question as to the validity of the indebtedness of the school district, of the levy and assessments to pay the same, of the sale of Skarvedt's property, and of the right of Edmundson to recover were involved in the original suit, and were determined, in so far as the issues presented in this case are concerned, by the judgment and decree in the original case. In these respects the case differs from *Kane & Co. v. Independent School District*, 82 Iowa, 5 (47 N. W. Rep. 1076). The judgment is, therefore, not void, but, according to appellants' contention, simply erroneous, and the only way to correct the error was by appeal. There is absolutely no evidence that the appeal was abandoned by the officers of the school district for the purpose of avoiding the constitutional inhibition. It is, then, simply a plain case of an erroneous, as distinguished from a void judgment; and it is well settled that such

a judgment can only be corrected by appeal, or some other direct proceeding. *Thompson v. McKean*, 43 Iowa, 402; *Darrow v. Darrow*, Id. 411; *Moore v. Jeffers*, 53 Iowa, 202 (4 N. W. Rep. 1084); *Perry v. Miller*, 54 Iowa, 277 (5 N. W. Rep. 727), and (6 N. W. Rep. 302); *McCrillis v. Harrison County*, 63 Iowa, 592 (19 N. W. Rep. 679); *Central Iowa Ry. Co. v. Piersol*, 65 Iowa, 498 (22 N. W. Rep. 648). The case of *Sioux City & St. P. R. R. Co. v. Osceola County*, 45 Iowa, 168, is in line with what we have said in this opinion, as to the duty of the officers of the corporation to make defense; and as to the validity of the judgment when rendered. Our conclusions also find support in the case of *Thomas v. City of Burlington*, 69 Iowa, 140 (28 N. W. Rep. 480), and *Sioux City v. Weare*, 59 Iowa, 95 (12 N. W. Rep. 786). We see no merit in either of the defenses interposed by the defendants, and are fully satisfied with the order made by the district court.—AFFIRMED.