GEORGE C. RANKIN, Receiver of the First National Bank of Chariton, Iowa, substituted for James H. Jamison, Receiver, v. THE CITY OF CHARITON, et al., Appellant.

Reference of causes: FINDINGS OF REFEREE: PRESUMPTION. The findings of a referee on questions of fact have the force of the verdict of a jury, and in the absence of any exceptions to such findings it will be presumed, on appeal from a judgment based thereon, that they were acceptable to both parties.

Municipal indebtedness: EXCESSIVE AMOUNT. City warrants issued in excess of the constitutional limit are invalid, although the municipality may have accumulated property greater in value than its outstanding indebtedness.

Same: JUDGMENT: LEVY OF TAXES: MANDAMUS: DEFENSES. To constitute a defense to an action in mandamus to require a tax levy to pay a judgment against a city, the judgment must have been absolutely void, not merely voidable; but the fact that the warrants upon which a judgment was entered were in excess of the constitutional limit is not enough to render the judgment invalid.

Same: ILLEGAL WARRANTS: JUDGMENT: VALIDITY. A judgment against a city on warrants in excess of the constitutional limit is not rendered invalid simply by reason of the fact that the parties to the judgment knew of the excessive levy; but if with such knowledge they purposely acquiesced in the entry of judgment that an illegal indebtedness might be imposed upon the city, not only the warrants but the judgment as well would be invalid.

Same. A judgment upon city warrants, a part of which were void because exceeding the constitutional limit, entered in good faith upon

agreement of the parties was valid, although the parties were informed of the illegality by a member of the council having only inaccurate information on the subject, it appearing that an off-set exceeded in amount the void warrants.

Same: JURISDICTION: APPEARANCE BY CITY ATTORNEY. It is the duty
6 of a city attorney to represent the city in all litigation pending in court, and his voluntary appearance thereto will confer jurisdiction to enter judgment without the service of an original notice.

Same: CITY WARRANTS: NOTICE OF ILLEGALITY. All parties dealing in
7 city warrants are charged with constructive notice of the issuance of warrants in excess of the constitutional limit.

*Appeal from Lucas District Court.*—HON. F. M. HUNTER, Judge.

WEDNESDAY, JANUARY 22, 1913.

ACTION to require defendants to levy a tax for the payment of a certain judgment against the city of Chariton resulted in an order as' prayed without prejudice to the maintenance of a suit to set aside or correct said judgment because of illegal warrants having been included therein.—*Affirmed.*

*J. W. Kridelbaugh and E. H. Storie,* for appellants.

*O. A. and L. B. Bartholomew,* for appellee.

LADD, J.    I.    This is an action to compel defendants to levy a tax out of which to pay a judgment of $13,488.76 and costs recovered against the city of Chariton, September 1, 1908. The defenses interposed were: (1) That the court was without jurisdiction to enter said judgment; and (2) that it was obtained through collusion and fraud. The evidence is without conflict save in minor details. The First National Bank of Chariton failed in October, 1907, and James H. Jamison was appointed receiver. At that time it held a large number of warrants issued by the city of Chariton, and, of course,

these passed into the hands of the receiver. He through his attorney requested the council to order the issuance of bonds in discharge of the warrants. That body declined so to do, but, instead, made a counterproposition. The county treasurer had deposited a large amount of moneys collected from the taxpapers in this bank, and of that not withdrawn prior to the failure $5,728.35 was payable to the city of Chariton by said treasurer, and the council proposed to the receiver that, if he would credit this amount on his claim, he might take judgment for the difference. The receiver, having first obtained authority from the Comptroller of the Currency, accepted this proposition. Thereupon the council adopted the following resolution:

Whereas, the First National Bank of Chariton, Iowa, is the owner and holder of the warrants of the city in a large sum, and whereas, the said bank also holds the money of this city in the sum of $5,728.35, and whereas, after allowing said money as a credit on the warrants held by it, it appears that the city will still be indebted to said bank in the sum of $13,488.76, as a balance due on city warrants so held by said bank, and whereas, the receiver of said bank has offered to allow credit on said warrants so held by said bank, amounting to the sum of $5,728.35, provided said city will allow him as such receiver to take judgment against said city at the August term of the district court for said balance of $13,488.76, as per written agreement herewith submitted: Wherefore, be it resolved that said offer of said receiver be accepted, and the mayor is hereby authorized and directed to execute said agreement and see that it is carried out.

The agreement prepared by the attorney for the receiver and the city attorney was in words following:

It is agreed by and between James H. Jamison, as receiver of the First National Bank of Chariton, Iowa, and the city of Chariton, Iowa, as follows, to wit: That whereas, the said receiver holds certain warrants made and issued by said city in the aggregate sum of $17,822.76, and whereas, the said city

had certain moneys belonging to it collected by F. P. Wright as county treasurer, as taxes due the city and deposited by him in the First National Bank in the aggregate sum of $5,728.35: Now, therefore, it is agreed: (1) That the said James H. Jamison as receiver shall commence proceedings in the August term of Lucas county district court against said city on said warrants. That his petition need not set out copies of said warrants, or separate counts on each, but may refer to them generally by number, date and amount. (2) That said city will appear and answer said petition at said term of court as if duly served with notice. (3) That said sum of $5,728.35 collected by F. P. Wright as county treasurer, for said city as taxes due and deposited by him in said bank, shall be allowed as an offset against the claims of the receiver on said warrants. (4) That after allowing said offset the said receiver shall have a judgment against the said city for the sum of $13,488.76 with 6 per cent. interest, without contest and including interest due on said warrants to September 1, 1908. (5) That said matter shall come on for hearing at the August term, 1908, of said court and be determined by said court as early in the term as possible. If said judgment is rendered after September 1, 1908, then interest shall be added at 6 per cent. to date of judgment from September 1, 1908. This contract subject to the approval of the Comptroller of the Currency.

In pursuance of this understanding, an unverified petition was filed by the receiver demanding judgment against the city for the amount due on the warrants, attaching thereto a list of said warrants, with date, to whom drawn, on what fund, and the amount of each. Notice was not served, but the city attorney appeared for the city, and the judgment entry recites:

It being agreed in open court that judgment shall be rendered against said city in accordance with a written agreement signed by Jas. H. Jamison, receiver, and C. P. Connell, mayor of said city, which agreement is attached and made a part of this record entry. It is therefore ordered by said court that the city of Chariton have as an offset against the warrants sued on in the sum of $5,728.35 money collected by F. P.

Wright, county treasurer, and deposited in said bank to his credit. It is further ordered that James H. Jamison, as receiver, have judgment against the said city of Chariton, Iowa, for the balance due upon said warrants after allowing said offset in the sum of $13,488.76 with 6 per cent. interest thereon from this date, and that execution issue thereon.

Such was the record made, and, before proceeding to trial, the parties stipulated:

That all the facts involved in the controversy in the above-entitled cause and necessary to a complete determination of all the issues in this case be left to a referee with full power to examine witnesses and require the production of all records of both defendant and the county of Lucas necessary for a full understanding of all the facts and report the evidence and his findings of facts therefrom to this court at the next term thereof, which same shall be subject to review by said court.

F. W. Drake, in pursuance of agreement, was appointed referee and later made report to which no exceptions were filed. Though he appears to have examined no witnesses, he did make an exhaustive examination of the books and files of the municipality, and his report disclosed that included in this judgment were warrants issued in excess of 5 per cent. of the assessed value of the property within the corporate limits of the city, amounting to $3,681.97, with $357.15 interest issued during the year ending March 1, 1905, $750 with $28.65 interest issued during the year ending March 1, 1906, and $550 with $49.85 interest issued during the year ending March 1, 1907. During these three years other warrants amounting to $6,299.22 were issued in excess of the constitutional limit of indebtedness, but these with $47.36 interest were paid to the First National Bank of Chariton, and in the year ending March 1, 1904, $976.67 in warrants in excess of said limit also were paid to it.

In the absence of exception of any kind to this report,

it cannot be rejected, but must be given the effect of a special verdict. Section 3741, Code. And, even though objected to when offered in evidence, it is to be presumed to have been acceptable to both parties, else exceptions would have been interposed. *Weitnauer v. Weitnauer*, 117 Iowa, 578; *Peck v. Schick*, 50 Iowa, 281; *Lyons v. Harris*, 73 Iowa, 292.

1. REFERENCE OF CAUSES: findings of referee: presumption.

The testimony of the city clerk tended to show that some of the outstanding indebtedness, making up the 5 per centum of the assessed valuation, was invalid; but he had been in office since 1909 only, and he did not pretend to say the resolutions and contracts essential as a basis thereof had no existence. On the contrary, he testified that all the papers and books had never been turned over to him, that he had never found all of them and had not made a thorough search of the office for those in question. Undoubtedly, the financiering of the city for several years was not conducted carefully. Levies were not made to create funds essential to maintain utilities acquired, to pay for improvements made, and, as a consequence, the general fund was overdrawn. Money was withdrawn from the latter fund, to pay for the site of a public library without submitting the matter to a vote of the people. The proceeds of bonds do not seem always to have been used for the purpose contemplated. Notwithstanding all this, the city appears to have accumulated property of the estimated value of $94,300 with an outstanding indebtedness of less than $70,000. But this does not excuse the municipal officers for exceeding the constitutional limit in creating debts, and there is no escape from the conclusion that warrants amounting to $5,417.62, which were void for this reason, were included in this judgment.

2. MUNICIPAL INDEBTEDNESS: excessive amount.

II. The parties concede that the mere fact that judg-

ment is voidable will not constitute a defense in an action
praying the issuance of a writ of mandamus.

**3. SAME: judgment: levy of taxes: mandamus: defenses.** It must be absolutely void.  1 Black on Judgments, section 253-a; Freedom on Judgments, section 281.

That warrants issued in excess of the constitutional limit
are included in the judgment does not alone impair its valid-
ity.  That was a matter of defense.  *Edmundson v. Ind. Dist.
of Jackson*, 98 Iowa, 639.

Nor is it enough that the parties to the judgment may
have known that the claims sued on were in excess of such
limitation.  *Ind. Dist. Rock Rapids v. Miller*

**4. SAME: illegal warrants: judgment: validity.** *& Thompson*, 92 Iowa, 676.

Had the warrants on which judgment
was entered been in excess of the constitu-
tional limit, and had the parties, with this knowledge, agreed
to or purposely acquiesced in the entry in order to impose
the indebtedness on the municipality, then such judgment
would have been of no greater validity than the original war-
rants, but would be, as they were, absolutely void.  *Kane &
Co. v. Ind. Dist. of Rock Rapids*, 82 Iowa, 5; *Schouweiler v.
Allen*, 17 N. D. 510 (117 N. W. 866).  Such a judgment would
be no better than those rendered by consent on municipal
bonds issued without power to do so, which all courts decline
to enforce because void on their face.  *Kelley v. Town of
Milan*, 127 U. S. 139 (8 Sup. Ct. 1101, 32 L. Ed. 77); *Texas
& P. R. Co. v. Southern P. Co.*, 137 U. S. 48 (11 Sup. Ct. 10, 34
L. Ed. 614); *Union Bank v. Commissioners of Oxford*, 119 N.
C. 214 (25 S. E. 966, 34 L. R. A. 487).

But only a part of the warrants sued on were invalid, and
one member of city council only, Hickman, seems to have been
so convinced.  His motion to repudiate all the
**5. SAME.** warrants held by the receiver was voted
down by the other members.  An expert examined the books
and, according to this witness, prepared a list of warrants
itemized, issued during six years prior to April, 1908, a

schedule of assets of the city, and from data in the auditor's office exhibited the legal amount of indebtedness which the city could incur each year, and, quoting: "In doing that he also made a calculation of the amount of indebtedness and how much it exceeded each year, the warrants, and, of course, the bonded indebtedness, which exceeded. By that schedule he satisfied my mind that the indebtedness was incurred at the time when the city was beyond its constitutional limit." But Van Dyke, another councilman, testified that the expert merely filed "a kind of a statement with the city clerk, not a report according to his agreement. I do not know what the statement was." Again the witness testified: "I do not know what he was trying to find out for the city, and neither I nor the city council ever learned anything from his report." We are satisfied from this evidence that Hickman had very indefinite information as to whether warrants in the hands of the receiver had been issued in excess of the constitutional limit and that other members had none. Undoubtedly Hickman advised the receiver that he was opposed to issuing bonds in satisfaction of the warrants and to the entry of the judgment stipulated, but no one seems to have had accurate or adequate knowledge on the subject until the referee filed his report in this action.

Undoubtedly counsel for the receiver went before the city council several times to urge the issuance of bonds in satisfaction of the warrants, but we are satisfied by the record that he never discussed the matter of a judgment. That was arranged by members of the council, with aid of the city attorney probably, with the receiver directly, and the city attorney and counsel for the receiver prepared the stipulation in pursuance of instructions. As said, the receiver knew of Hickman's objections, and for this reason it is immaterial whether his counsel did or not; but, beyond this, the receiver was without information save as charged therewith. We have then this situation: The receiver held warrants issued by the city aggregating $17,822.76, and with interest making altogether

over $19,000, and there was a deposit in the bank when it failed made by the county treasurer of $5,728.35 belonging to different city funds. Neither party had actual knowledge of warrants being illegal, but both were so advised by a councilman without accurate or adequate information of such fact, though warrants with interest amounting to $5,417.62 were void because issued in excess of the constitutional limit, and the parties in stipulating that judgment be entered for the total amount of warrants held by the receiver less the deposit acted in actual good faith. Was the judgment entered in pursuance of such stipulation void? We think not, for that the element which would render it void was utterly wanting, i. e., fraud or collusion to avoid the constitutional limitation. Neither party in what was done was actuated by the purpose or intent to saddle an unjust or illegal indebtedness on the municipality. The facts are distinguishable from *Kane & Co. v. Ind. Dist. of Rock Rapids, supra.* There both parties were aware that the warrant to Kane & Co. was issued after the indebtedness of the school district greatly exceeded the constitutional limit, and the fraud which nullified the judgment was that, in obtaining it, the parties, notwithstanding such knowledge, colluded to have it entered, and thereby to impose the obligation to pay in utter defiance of the fundamental law. The officers of a municipality are as wanting in power to agree to such a judgment as they are to create the alleged indebtedness on which it is based. But where judgment is entered, even on a void warrant, in absence of fraud or collusion, there is no ground for declaring it void merely because the claim was unjust. That was matter of defense. *Howard v. Huron,* 5 S. D. 539 (59 N. W. 833, 26 L. R. A. 493). Nor can it be said that a judgment is void where the parties in adjusting differences or conflicting items stipulate that one or the other have judgment for the balance in his favor, if they act in good faith and without the purpose of evading the Constitution, or in belief that it will have that effect, and it turns out that a part of the indebtedness on which it is based was in excess of the

constitutional limit, though otherwise valid. As said, the element of fraud is utterly wanting in such a case—that is, fraud which will nullify the judgment—and the court did not err in finding it was not proven in the case at bar.

III. Appellant also contends that the court, in entering judgment sought to be enforced, acted without jurisdiction. The action was not begun by the service of an original notice, but the city attorney appeared for the municipality. An appearance is authorized by statute (section 3541, Code), and when made renders any further notice unnecessary. In *McCarthy v. City of Washington,* 124 Iowa, 382, acknowledgment of service by the mayor was held sufficient, and, under the statute of Kansas, a city is bound by the voluntary appearance of the mayor without notice. *City of North Lawrence v. Hoysradt,* 6 Kan. 170. It is the duty of a city attorney to represent the city in litigation pending in court, and his appearance for it in instituting suit or in its behalf when sued, in the absence of any showing to the contrary, is presumed to have been authorized. *Wheeler v. Cox,* 56 Iowa, 36; *City of Belleville v. Citizen's Horse Ry. Co.,* 152 Ill. 171 (38 N. W. 584, 26 L. R. A. 681; 3 Am. & Eng. Ency. of Law [2d Ed.] 375). Here the evidence disclosed express authority to appear without notice having been served. In view of the statutes providing that the municipalities may sue and be sued prescribing the manner of voluntary appearance, there is no ground for the suggestion that a city may not appear in defense of an action in the absence of notice. The authorities cited by appellant do not so hold, and we are of opinion that the city council, which manages the affairs of a city, may authorize a voluntary appearance, and, when this is done, the city is bound thereby precisely as any other party against whom suit has been brought.—*Affirmed.*

6. Same: jurisdiction: appearance by city attorney.

*Supplemental Opinion.*

THURSDAY, MAY 13, 1913.

PER CURIAM.—Appellants have filed a petition for re-hearing, and therein contend that, as the parties hereto had constructive notice of the invalidity of the warrants, the alleged indebtedness represented thereby might not be rendered valid by any subsequent agreement entered into, and for this reason the judgment entered in pursuance of such an agreement between the city council and Jamison as receiver for the amount of warrants issued in excess of the statutory and constitutional limitations was of no greater validity than the original warrants. If this were to be conceded and a purely adversary action be held essential to terminate the issue in such a case, the defendants would not be in a situation to raise the question, for the bank in behalf of which the receiver was acting had received from the county treasurer $5,728.35 belonging to the city, and whether this would ever be available was doubtful to say the least.

On the other hand, $5,417.62 of the warrants of the city held by the bank were void, and of this all parties were charged with constructive notice. *French v. Burlington,* 42 Iowa, 617; *First Nat. Bank v. District,* 86 Iowa, 338; *McPherson v. Foster,* 43 Iowa, 48; *Swanson v. Ottumwa,* 131 Iowa, 551. But they were without actual knowledge and proceeded in good faith to adjust their differences, and the result of their compromise, was that the receiver allowed the entire amount deposited with it by the county treasurer and belonging to the city, and this exceeded by $310.73 all the void warrants included in the judgment. How much then has the city lost? No one can say from this record that a single void warrant was in fact included in this judgment. It is a judgment, based on such a compromise, that is upheld in the opinion, and not, as counsel assumes in argument, one resting solely

7. SAME: city warrants: notice of illegality.

on an agreement that judgment be rendered on warrants void because issued in excess of the constitutional or statutory limitation of indebtedness.

The opinion is adhered to, and the petition for rehearing *Overruled*.