C. G. Schubert et al., Appellants, v. L. A. Andrew, State Superintendent of Banking, et al., Appellees.

FEBRUARY 14, 1928.

*Heald, Cook & Heald*, for appellants.

*O. H. Montzheimer*, for L. A. Andrew, receiver, appellee.

*L. O. Lampman*, for J. F. Yeager and O'Brien County, appellees.

*Stipp, Perry, Bannister & Starzinger* and *G. C. Murray*, for interveners, appellees.

ALBERT, J.—On July 29, 1924, Robert L. Leach, superintendent of banking of the state of Iowa, was appointed permanent receiver of the Sanborn State Bank. Later, he was suc-ceeded as such receiver by L. A. Andrew, superintendent of banking of the state of Iowa. O'Brien County, Iowa, filed its claims in said

receivership, and on the 25th day of October, 1924, it also filed a petition in said receivership, asking that its two claims, amounting to respectively $521.82 and $20,357.60, be allowed as preferred claims. On November 19, 1924, that matter came up for hearing, and the court made an order allowing the county's claim in the sum of $20,336, and a further sum of $516.34 as preferred claims, and ordered the same paid before the depositors' and general claims in said bank. From this order the receiver appealed, and on February 16, 1926, the appeal was dismissed in this court. *Leach v. Sanborn State Bank*, 201 Iowa 1323. Thereafter, this action was instituted by the plaintiffs herein, and brought, not only in their behalf, but on behalf of all of the creditors of said bank. They allege that they were depositors in said bank, and had filed their claims. They set up a history of the filing of the claims by the county, and their allowance by the court as preferred, and allege that the assets of the bank are insufficient to pay the claims filed therein; that the county's claim should not have been allowed as a preferred claim; that the plaintiffs and the persons they represent were not parties to the original action for the appointment of a receiver, nor were they parties to the proceedings allowing said county's claim a preference; and that the order so allowing said claim was without the knowledge and consent of the plaintiffs and the persons represented by them; that it was the duty of the receiver to make defense against said claims; that such receiver disregarded his duty, and failed to appear and make defense thereto, but purposely and intentionally failed to appear and defend against said claims, and when said claims were presented to the court, allowed the order to be made, without protest or objection; that said order was made without the hearing by the court of any evidence of any kind or character; and that the same was entered of record because of the fact that no protest or objection was made by the receiver; that said conduct on the part of the receiver was the result of a tacit and implied understanding with the county and treasurer thereof that no defense would be made, and that there would be no resistance thereto; and that the conduct and such understanding constituted a fraudulent agreement and collusion between the county, the treasurer thereof, and the receiver, to cheat and defraud these plaintiffs and the persons they represent, and to take away from

them their just proportion of the assets of said bank; that, by reason of the fraud and collusion above set out, the court entered said order, which would not have been done, had there not been a conspiracy between the plaintiffs and defendants, as hereinbefore set out, to defraud and cheat these plaintiffs and the persons represented by them; that plaintiffs are the real parties in interest, and had a right to rely on the receiver in performing his duty; and that they did not know of said fraudulent implied understanding and agreement. Therefore they ask that the order allowing said claim be set aside and annulled, and they suggest such other relief as the court may deem equitable.

It will be noticed from the aforesaid summary of the petition that it is based on two contentions: (1) That the receiver breached his duty in failing to defend against said claim of the county, and (2) that said order was procured by fraud and collusion between the receiver, the county, and its treasurer. No evidence whatever was introduced in the case on the second proposition; hence, so far as plaintiff's petition is concerned, the only issue tendered was the failure and negligence of the receiver to make defense to the county's claim for preference.

It appears that, to secure the deposits made in the Sanborn State Bank, the county held two depository bonds: one with the American Surety Company of New York, and the other with the Fidelity & Deposit Company of Maryland. At this point in the instant case, each of these surety companies intervened in this action, pleading that, after the decision of the appeal above referred to, each of said companies purchased from O'Brien County 50 per cent of the preferred claims as established under the order above referred to. They say in their petitions of intervention that the matters now sought to be litigated by these claimants are *res adjudicata*, and the order was properly made by the said district court, and that plaintiffs herein were parties to said action, having been made so by published notice; deny that there was any fraudulent agreement or collusion between the county, its treasurer, and the receiver; deny each and every other allegation of plaintiffs' petition herein not substantially admitted; and ask that the plaintiffs' petition be dismissed, and for such other and further relief as equity affords.

Andrew, superintendent of banking, filed a separate answer, in three divisions. He admits all the allegations of plaintiffs'

petition, except that he denies that he purposely and intentionally failed to appear and defend against said claim; denies that the order was made without the hearing by the court of evidence; denies that no protest or objection was made by him; also denies that there was a tacit and implied understanding between the county, its treasurer, and the receiver that no defense would be made to said petition of intervention; denies that there was any fraudulent agreement or collusion between the receiver, the county, and its treasurer; denies that there was any conspiracy between them to defraud and cheat the plaintiffs and persons represented by them.

In Division 2 he pleads that, on the 10th day of January, 1925, he made to the court a report of claims filed, and reported the county claims as depositors' claims, and denied them any preference over other depositors' claims; and that the county treasurer filed objections to the jurisdiction of the court to act on said report, and said issue has not been disposed of.

In Division 3 he alleges that he had no personal interest in this controversy, but desired to act only in accordance with the order of court and the rights of the parties, as determined by the court; asks that the receiver's report classifying said claims of the county as depositors' claims be approved, and that this cause be consolidated with the original receivership, for further trial and disposition.

Answering the petition of intervention, plaintiffs deny each and every allegation contained in such petition, except that they admit that Andrew was the duly appointed receiver; admit the entry of record of the order of November 19, 1924, allowing O'Brien County's claims as preferred, admit that there was an appeal therefrom to the Supreme Court, and that the same was dismissed.

Interveners amended their petition, alleging that the plaintiffs in the case at bar permitted the receiver to represent them upon the hearing of the O'Brien County claim for preference, and did not intervene or resist said claim at any time on their own behalf, and that the same was true of the appeal of the county's claim to the Supreme Court; that plaintiffs did not bring this action for eight months after the original order allowing said preference, and the interveners were not aware that the plaintiffs in this case were asserting any rights against the

county's claims until subsequent to the purchase by them in good faith of the said county claim; and that the plaintiffs are, therefore, estopped from denying the rights of the interveners to have said preferred claim paid in full by the receiver.

The order involved herein is as follows:

"Now, to wit, on this 19th day of November, 1924, it being one of the regular days of the November, 1924, term of said court, this cause comes on for hearing on the petition of intervention for preference of claim filed by the county of O'Brien, Iowa, and J. F. Yeager, asking that the county's deposits of $20,336 and $516.34 respectively be held to be preferred claims against all of the assets of said bank in the hands of said receiver. The court, being fully advised in the premises, finds that all the allegations of the petition of intervention are true, and that said claim should be and is a preferred claim, as prayed in said petition. It is therefore ordered, adjudged, and decreed that the sum of $20,336 and a further sum of $516.34 are preferred claims, and that the same are established as preferred claims against all the assets of said bank, and are to be paid before the depositors' and general claims of said bank are paid."

A preliminary matter should be disposed of here.

It appears that the receiver herein filed a list of creditors of the corporation and designated their status. Among others it designated the claims of the county herein as those of ordinary depositors' claims, without a preference. The record is not quite clear as to whether this report and recommendation by the receiver was made before or after the entry of the order attacked herein; but the county had filed objections to this classification of its claim, and the plaintiffs herein insisted that the question was still open before the district court by reason thereof. Regardless of whether this report of the receiver's was filed before or after the entry of the order herein, about which complaint is made, neither the plaintiffs herein nor the receiver can derive any benefit therefrom, because the order of the court was superior to the recommendations of the receiver. The real battle ground in this case is whether or not the plaintiffs are in a position to maintain this action, and if so, whether or not they have sustained the cause of action set out by them.

It is apparent that the difficulties in this case arose from a change in the law of this state by reason of an enactment by the

general assembly. We held, in the case of *In re Receivership of Marathon Sav. Bank*, 198 Iowa 692, that the county, under these circumstances, was entitled to a preference. By reason of the enactment of Chapter 189, Acts of the Fortieth General Assembly, we later held, in *Leach v. Exchange State Bank of Stuart*, 200 Iowa 185, that the county was not entitled to preference. The receivership in the instant case was commenced, and the order entered by the lower court allowing the county's claim a preference, after the enactment of the fortieth general assembly, but before the decision in *Leach v. Exchange State Bank of Stuart*, supra. The record shows that, after the county had filed its claims, the receiver advised its attorney that it had no defense against the county's claim, and that the county was entitled to preference. The matter was called up in court for hearing on the county's claim, and, on the court's calling the matter to the attention of the attorney for the receiver, such attorney advised the court that he knew of no defense to the claim. Opposing counsel suggested that they would like to get an order of court with reference to these claims, and the judge asked the attorney for the receiver if it were satisfactory, or words to that effect, and he replied, ''Yes, there is no defense to it.'' Thereupon the presiding judge signed the order. It is apparent that all of the parties at the time were laboring under the assumption that the case of *In re Receivership of Marathon Sav. Bank* was controlling. Appellants insist that that order was based solely upon the ruling in the *Marathon Bank* case, which was a mistake, as the law had been amended by the legislature to change the rule, as shown in *Leach v. Exchange State Bank of Stuart*, supra.

Plaintiffs' petition herein is bottomed on the proposition that a fraud was perpetrated on these claimants and the parties and depositors they represent, in that the receiver made a fraudulent agreement or colluded with the claimant, the county, and that a conspiracy existed between them to allow this claim in violation of law. There is no evidence whatever in the record, and none tendered, to show any such agreement, collusion, or conspiracy between the receiver and the county. If there is any fraud in this case, it must be found in the mistaken view of the law entertained by the parties and the court at the time the order was entered, if such matters could be considered as fraud.

The question, therefore, narrows itself down to the simple question of whether or not, where an order is made in a case of this kind by the court in which the receivership proceedings are pending, creditors of the estate may afterwards attack the same on the ground that the court was mistaken in the law governing the matter involved. To so hold would create too much uncertainty in proceedings of this kind. Litigation would be endless, and if one creditor could attack such an order, all could.

Various ones of our rulings have been called to our attention, in which matters of a similar character have been brought in estates; and it has been our unbroken rule that the validity of all of these intermediate orders might be considered in a hearing on the final report of the executor or administrator. This is our rule, not by reason of any general principle of law, but because of a statutory provision in this state, providing for such attack on intermediate orders made in an estate. We have no such provision, however, with reference to receiverships. We accept, without indorsing, the allegation of appellants that, if this order had been procured by fraud, these depositors had such an interest therein that they could maintain an action to set aside the same. In fact, such seems to be the general rule. But we are not inclined to hold that, where the record is absolutely silent on the question of fraud, the simple fact that the court or parties may have been mistaken as to the law governing the questions before it· gives creditors circumstanced as are the plaintiffs in this case a right to attack the same in an equity action to set it aside, based on the mistaken apprehension of the law by the court in entering the order.

Another angle of this appears to us to be entitled to consideration; and this involves a double-edged sword, in that the plaintiffs claim that they are not bound by the action of the  receiver herein, because no notice was served upon them of the claim of the county, and they were not parties to the hearing on the county's claim. It does not seem possible to us that every claimant who files a claim in a receivership is bound to serve notice on all other claimants before the court is entitled to make an order allowing or disallowing such claim. The plaintiffs in this case filed claims which were allowed. Is it possible that, at this late date, some other claimants can come in and ask to have allowance

of such claims set aside because the court was mistaken as to the law governing the allowance of such claims? We think not. If we should so rule, the receiver in matters of this kind could not safely make any distribution of an estate until the five-year limitation had run, which would make an impossible condition. The aim and purpose in all of these receivership matters are that the receiver shall be as expeditious as possible in husbanding and distributing the estate that comes into his hands; and to thus hold that an order allowing the claim could be attacked by equity proceedings at any time within the statute of limitations would create such uncertainty, delay, and expense as would be unsufferable.

In the brief and argument of the plaintiffs much stress is laid on the case of *Leach v. State Sav. Bank*, 202 Iowa 97. In that case it was stipulated in the lower court that the rights of the county were to be determined under a certain section of the Code, and on appeal, this court refused to be bound by a stipulation as to the law, and in the course of the discussion said:

"We may add that it was not within the function or power of the receiver to stipulate *the law* adversely to his trust."

The *Leach v. State Sav. Bank* case, however, has no application to the case at bar, because that case was determined on direct appeal, and it is further distinguished in that there is no stipulation whatever in the case at bar governing the law of the case. The most that can be said is that the attorney for the receiver claimed that he knew of no defense, and the lower court, in passing thereon, had to, and did, determine for itself the law of the case, and held that the claim was entitled to a preference.

The next case called to our attention is that of *Kane & Co. v. Independent Sch. Dist.*, 82 Iowa 5. In that case the Independent School District of Rock Rapids suffered a judgment to be entered against it by default. The record shows that both parties to the original litigation knew that the claim sued upon was void because it exceeded the limit of lawful indebtedness. Article XI, Section 3, Constitution of the state of Iowa. Whatever virtue there may be in the *Kane & Co.* case, the weight to be given to it has been minimized by our later cases, and especially the case of *Rankin v. City of Chariton*, 160 Iowa 265. In the *Rankin* case, as in the *Kane & Co.* case, the action was

brought to compel a levy of a tax to pay a judgment which had been previously obtained by a written agreement stipulating that the plaintiff should have such judgment. The city set up this stipulation and agreement as proof of collusion and fraud, as is done by the plaintiffs in the case at bar. We there said:

"Was the judgment entered in pursuance of such stipulation void? We think not, for that the element which would render it void was utterly wanting, i. e., fraud or collusion to avoid the constitutional limitation. Neither party in what was done was actuated by the purpose or intent to saddle an unjust or illegal indebtedness on the municipality. The facts are distinguishable from *Kane & Co. v. Ind. Dist. of Rock Rapids*, supra. There, both parties were aware that the warrant to Kane & Co. was issued after the indebtedness of the school district greatly exceeded the constitutional limit, and the fraud which nullified the judgment was that, in obtaining it, the parties, notwithstanding such knowledge, colluded to have it entered, and thereby to impose the obligation to pay in utter defiance of the fundamental law. The officers of a municipality are as wanting in power to agree to such a judgment as they are to create the alleged indebtedness on which it is based. But where judgment is entered, even on a void warrant, in absence of fraud or collusion, there is no ground for declaring it void merely because the claim was unjust. That was matter of defense. *Howard v. Huron*, 5 S. D. 539 (59 N. W. 833, 26 L. R. A. 493). Nor can it be said that a judgment is void where the parties, in adjusting differences or conflicting items, stipulate that one or the other have judgment for the balance in his favor, if they act in good faith and without the purpose of evading the Constitution, or in belief that it will have that effect, and it turns out that a part of the indebtedness on which it is based was in excess of the constitutional limit, though otherwise valid. As said, the element of fraud is utterly wanting in such a case,—that is, fraud which will nullify the judgment,—and the court did not err in finding it was not proven in the case at bar."

All that is held in the case of *Stewart Lbr. Co. v. Downs*, 142 Iowa 420, is that a stranger to a judgment cannot, by an independent suit, challenge the judgment and have it corrected as to the amount, without a showing that the judgment was entered through fraud and collusion of the parties.

In *Edmundson v. Independent Sch. Dist.*, 98 Iowa 639, the holding was that the judgment against the school district could not be attacked in an action in mandamus, to compel the district to levy a tax to satisfy said judgment, on the ground that the debt upon which the judgment was rendered was in excess of the constitutional limitation, as such exercise was a matter of defense, and should have been interposed in the suit in which the judgment was obtained. Hence none of these cases have a bearing upon the question before us.

The other cases cited by appellants are probate proceedings, in which intermediate orders for the allowance of claims were attacked by other creditors of the estate. As heretofore suggested, they have no bearing upon the question before us, by reason of the following sections of the Code of 1924:

"12050. Any person interested in the estate may attend upon the settlement of his accounts and contest the same."

"12051. Accounts settled in the absence of any person adversely interested, and without notice to him, may be opened within three months on his application."

Appellants also cite *Balch v. Beach*, 119 Wis. 77 (95 N. W. 132), a Wisconsin case which is identical with our *Kane & Co.* case above cited; and, as we have receded from the doctrine therein, the Wisconsin case will be of little use in consideration herein.

Appellants also cite *Ramsey v. Hicks*, 53 Mo. App. 190, which, in its holding, as a matter of fact, is antagonistic to the contention of appellants. The action was to set aside the allowance of a claim in a suit. The claim was alleged to be fraudulent, and without foundation in law or fact, and it was alleged that the allowance was the result of collusion between the defendants and the administrator, and that the administrator failed to notify the plaintiffs of the existence of the claim. The plaintiffs were the heirs to the estate. The rule therein announced is:

"The rule is that there must have been fraud in the procurement of the judgment itself to authorize a court of equity to set it aside. * * * Proof that the claim itself was tainted with fraud, or that the evidence adduced at the trial was insufficient to authorize the judgment, becomes admissible only when there is other evidence tending to prove fraud in obtaining the judg-

ment, and then only to enable the court the better to judge of the criminating circumstances.''

We have now made reference to all of the cases cited by appellants, and find little aid in any of them in determining this question.

Another matter that seems to be an insuperable obstruction to plaintiffs' cause of action herein is that they had a speedy  and adequate remedy at law, by appealing from the order of the district court allowing the county's claims a preference. Such seems to be the general rule. High on Receivers (4th Ed.) 971, Section 819a. That the remedy by appeal existed is held in the following cases:

*Eiswald v. Nautical Prep. Sch.* (R. I.), 75 Atl. 262, holds, in substance, that, the rights of all claimants entitled to distribution of the funds in the receiver's hands being affected by the decree, the general estate is to be exhausted first in the payment of the costs and expenses of receivership, before any money can be taken therefor from the special funds, and appeal will lie therefrom.

In *Links v. Connecticut River Banking Co.*, 66 Conn. 277 (33 Atl. 1003), the receiver refused to sue certain delinquent stockholders, and other stockholders attempted to sue the delinquent ones. It is there said that the remedy was to make application to remove the receiver, or to apply for an order to compel suit to be brought, and if this was denied, they should appeal.

It is our conclusion that the dissatisfied creditors in this matter, being the parties who were prejudiced by the order of court, had the right to appeal, and thus have the matter ad-  judicated. Having failed so to do, they waived their right. The remedy thus afforded them would be complete without going into equity; or they could have appeared promptly when they discovered that this order had been made, and made application in the receivership to have the order set aside. This they did not do, but waited for some eighteen months after the original order was entered, before they moved. We feel that, under the circum-

stances related, they had no remedy. Such was the holding of the district court.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, DE GRAFF, and WAGNER, JJ., concur.