Trustees of Green Bay Levee and Drainage District No. 2, Lee County, et al., appellants, v. Frank B. and Ora Alexander, husband and wife, et al., individually and as representatives of a class owning or claiming interest or title to respective parcels of real estate described in toto*, appellees.

No. 50083.

(Reported in 108 N.W.2d 593)

802

*Commencing at the Northwest corner of the Southwest Quarter of the Southeast Quarter of Section 17, Township 68 North, Range 3 West, of the 5th Principal Meridian in Lee County, Iowa, and running thence East along the quarter section line to the Northwest corner of the Southwest Quarter of the Southwest Quarter of Section 16, thence North along the section line to the Northwest corner of the Southwest Quarter of Section 16, thence East along the center line of said Section 16 to center of said Section 16, thence South along the center line of said Section 16 to the Southwest corner of the Southwest Quarter of the Southeast Quarter of said Section 16, thence East along the section lines to the Southeast Corner of the Southwest Quarter of the Southwest Quarter of Section 15 in said Township and Range, thence North along the quarter section line to the Northwest corner of the Northeast Quarter of the Southwest Quarter of said Section 15, thence East along the center section line to the center of said Section 15, thence South along the center section line to the Northwest corner of the Southwest Quarter of the Southeast Quarter of said Section 15, thence East along the quarter section line to a point due North of a tract of land in the Southeast Quarter of the Southeast Quarter of said Section 15 now owned by Louis McVey, thence South to the Northwest corner of said Louis McVey land, thence East along the North line of said Louis McVey land to the West line of Section 14 in said Township and Range, thence South along said Section line to the Southwest corner of said Section 14, thence East along the Section line to the Southwest corner of the Southeast Quarter of the Southwest Quarter of said Section 14, thence North along said quarter section line to the Northwest corner of the South 19.7 acres of the Southeast Quarter of the Northwest Quarter of said Section 14, thence East along the North line of said 19.7 acre tract to the center section line of said Section 14, thence North along said center section line to the Northwest corner of the Northeast Quarter of said Section 14, thence East to the Northeast corner of the Northwest Quarter of the Northeast Quarter of said Section 14, thence South along said quarter section line to the Southwest corner of the Southeast Quarter of the Northeast Quarter of said Section 14, thence East along the center section line of said Section 14 to the Southeast corner of the Northeast Quarter of said Section 14, thence North along the section lines to the Southeast corner of Section 2 in said Township and Range, thence West along the section line to the Southwest corner of the Southeast Quarter of the Southeast Quarter of said Section 2, thence North along the quarter section line to the Northwest corner of the Southeast Quarter of the Southeast Quarter of said Section 2, thence East along the quarter section line to the Southeast corner of the Northeast Quarter of the Southeast Quarter of said Section 2, thence North along the section line to the center line of Skunk River as now located, thence along the center line of said Skunk River in a generally Westerly direction to the point of intersection between the center line of said Skunk River and the Southeasterly line of the right of way of the Chicago, Burlington & Quincy Railroad Company, thence along said right of way line in a generally Westerly and Southerly direction to the point of intersection between said right of way line and the center line of Section 8 in said Township and Range, thence East along the center section line to the center of Section 8, thence South along the center section lines to the point of beginning;
said real estate above described being situated in Lee County and Des Moines County, Iowa,
Also Sections 32 and 33 in Township 69 North, Range 3 West of the 5th Principal Meridian in Lee County, Iowa.

APRIL 4, 1961.

Napier & Fehseke, of Fort Madison, for appellants.

Phelan & Johnson, of Fort Madison, for appellees.

THORNTON, J.—Plaintiffs are the trustees of Green Bay Levee and Drainage District No. 2, Lee County, Iowa, and

individual owners of land in the district known in the record as "high tax land." Defendants are owners of land in the district known as "five cent land."

The district was established July 14, 1916, and thereafter a board of trustees was established to operate the district.

The district is a tract of land of 13,336.67 acres lying south and west of the confluence of the Skunk and Mississippi Rivers in Lee County, bounded on the east and south by the Mississippi River and on the west and north by the bluffs and the Skunk River. A small portion of the district lies north of the Skunk River in Des Moines County. The land above described is 4521.32 acres farthest away from the Mississippi, is the five cent land, and is owned principally by the defendants who are the Green Bay farmers or their grantees. The land owned principally by plaintiffs is the pumping area, is 8815.67 acres, and was acquired by them or their grantors by tax deeds in the 1930s. The pumping area lies between the five cent land and the Mississippi.

In 1910 the Mississippi River Power Company was authorized by the Congress to construct a hydroelectric dam and power plant at Keokuk and to condemn and acquire flowage rights along the river above the dam. The project was completed in 1913. The power company acquired ownership or flowage rights over practically all the land in the pumping area, now owned by the individual plaintiffs.

Counsel for the parties have by much work presented an excellent stipulation showing the proceedings relating to the creation of the district. The stipulation shows the petition which eventually resulted in the formation of the district was filed January 25, 1915. The engineer's report was filed and statutory notice given of the pendency of the petition. On December 15, 1915, owners of the five cent land, the Green Bay farmers, the predecessors in title to defendants here, filed remonstrances against the establishment of the district, basically on the ground that their lands would not be benefited by the creation of the district, nor by the reclamation of land owned by the power company and necessitated by its artificial raising of the level of the Mississippi.

On June 8, 1916, the contract between almost all of the farmers who had filed remonstrances and the power company was signed. This contract is the point of controversy in this action. Briefly, the contract provided that in consideration of the concessions and obligations therein set out the levee and drainage district and pumping station may be established by the board of supervisors substantially as outlined by the plat attached and with assessments for establishment, construction, maintenance and operation thereof as therein provided and according to the terms thereof. The sense of the contract is, the entire cost of the establishment, construction, maintenance and operation of the district and pumping station was to be assessed against the land then owned by the power company and charged against such land, except the Green Bay farmers were to be assessed as provided by statute for levees, ditches and drains wholly on their lands and were to be assessed five cents (5¢) per acre annually for maintenance after the completion of construction. If five cent land was later acquired by the power company, its agents, or employees, it was to be assessed according to benefits received, the five cents per acre to be no longer applicable. The agreement was binding on the power company, its successors, grantees and assigns.

The contract was filed with the board of supervisors on June 20, 1916, and the board on that day approved the report of the engineer as amended, found the petition sufficient and the improvement necessary, and made the contract a part of the proceedings. On July 14, 1916, the board passed a resolution establishing the district, and appointed commissioners to make apportionment of costs and benefits as required by law and the contract on file in the proceedings. On the same date the board passed a resolution to issue bonds, such to be a lien only on the land of the power company. Three landowners filed notices of appeal, one perfected his appeal to the district court. This appeal was dismissed October 10, 1916. On October 7 these three landowners had entered into a contract with the power company similar to the five cent contract and providing the power company and its successors were to pay any assessments in excess of the five cents per acre on the land of the farmers, such excess to be a lien on the land of the power com-

pany. This contract was not filed with the board or auditor, but was filed in the recorder's office.

The plaintiffs filed their petition February 3, 1956, and filed numerous amendments, apparently down to and including the fifth day of May, 1958, when exhibit "B" was attached to their petition, a resolution passed on that date by the board of trustees. The resolution found a reclassification of the land was necessary and appointed commissioners to reclassify all the land subject to assessment in the district.

In their petition, as amended, plaintiffs set out the controversy between plaintiffs and defendants, that defendants claim the five cent contract limits the annual assessment for drainage district purposes against their lands to a maximum of five cents per acre and prohibits reclassification of the land in the district; and plaintiffs claim said contract does not so limit assessments on defendants' land or reclassification according to benefits received. Plaintiffs set out reasons A through X why said contract is invalid and of no force and effect. They allege the Acts of the Fifty-seventh General Assembly purporting to prevent a reclassification in districts established by mutual consent are. violative of the Constitution. They ask declaratory relief construing the contract and the rights of the parties as to assessments; and that said five cent contract be held null and void, that plaintiffs may reclassify and reassess defendants' land, and that the district was not one established by mutual agreement. In other words plaintiffs ask that they may assess defendants' land in excess of five cents per acre annually.

Defendants contend this is not a case for declaratory relief and set up a 1930 decree in case number 7703 as res judicata and estoppel, also that plaintiffs are guilty of laches. In their reply plaintiffs set up eight reasons why the pleas in res judicata and estoppel are ineffectual. The trial court held the defense of res judicata was good and plaintiffs were estopped by the 1930 decree to question the validity of the contract, plaintiffs were guilty of laches, and the district was one established by contract.

I. The first question for determination is the plea of res judicata. Recently we quoted with approval the general

definition from 30A Am. Jur., Judgments, section 324, page 371, as follows:

"[Briefly stated], the doctrine of res judicata * * * is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions, and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction."

We pointed out the test is: 1. Same parties, or parties in privity. 2. Same cause of action. 3. Same issues. Also that the doctrine may exist under two situations: (1) As a bar to a second action upon the same cause of action, and (2) as a bar to relitigation of particular facts or issues in a different cause of action. In re Estate of Richardson, 250 Iowa 275, 281, 93 N.W.2d 777, 781, and citations.

In Kunkel v. Eastern Iowa Light & Power Cooperative, 232 Iowa 649, 657, 5 N.W.2d 899, 903, the two phases of the doctrine are set out. We there quote from Citizens State Bank of Panora v. Snyder, 181 Iowa 11, 13, 162 N.W. 6, as follows:

"We have held there is a distinction between an adjudication and an estoppel to relitigate things before litigated. There is an adjudication in strictness when a suit is repeated. But short of that, there may be an estoppel which defeats an action because some fact which is controlling in both actions was litigated and set at rest in the first action."

In both instances the parties must be identical or in privity. And no one can be barred by res judicata until he has had full legal opportunity for an investigation and determination. State ex rel. Howson v. Consolidated School District, 245 Iowa 1244, 1248, 65 N.W.2d 168, and citations.

Plaintiffs urge here the 1930 decree was the result of collusion and fraud, there was no identity of parties, or of subject matter and because no specific ground of the prior suit is known it cannot be applied here, there has been a change of circumstances since the decree and land in a drainage district is always subject to reclassification.

The 1930 decree was obtained by default in the Lee District Court. In April 1928 the board of supervisors adopted a resolution assessing the lands of the Green Bay farmers, grant-

ors of defendants here, in excess of five cents per acre provided for in the contract. On January 3, 1929, the Green Bay farmers commenced action number 7703, an action in equity against the board of supervisors, ex officio Trustee of Green Bay, Lee County, Iowa, Drainage District No. 2, and the county treasurer. In the petition filed the plaintiffs set out the proceedings leading up to the establishment of the district, the legal effect of the contract, and set it out in full as Exhibit "A". This is the same contract attached to plaintiffs' petition as Exhibit "A" in this action. They allege their performance of the contract and the breach by the assessments levied on April 17, 1928. They also allege the resolution levying the assessment included land not in the district, that no notice was given them of the proceedings of the board and they did not know of the assessments until the tax was spread upon the records in the treasurer's office and appeared as a lien on their land. They prayed that the treasurer be enjoined from collecting the tax and that the board and drainage district be forever enjoined from levying any assessment against the lands of these plaintiffs other than as provided for in said agreement, for costs and general equitable relief. The defendants appeared by counsel and filed a motion to strike and for more specific statement, an amendment to this motion was filed and a ruling entered. Later plaintiffs amended their petition by setting out the resolution adopted July 16, 1916, establishing the district. A renewal of the motion for more specific statement was overruled June 30, 1930. The defendants failed to answer and on October 10, 1930, a default decree was entered, reciting, "J. M. C. Hamilton appearing for the defendants, and defendants are * * * in default for want of an answer." The decree orders the 1928 assessment canceled and enjoined the collection thereof. The decree further provides:

"* * * That they [treasurer and the Green Bay Drainage District No. 2 of Lee County, Iowa] be forever enjoined and restrained from levying any assessment against the lands of these plaintiffs as above named other than as provided in the written agreement signed by plaintiffs and made part of the record establishing said district. * * *."

■ II. An examination of plaintiffs' cause of action in this action and plaintiffs' (defendants here) cause of action in case number 7703 discloses plaintiffs here are asking to do the very thing enjoined in case number 7703. In fact case number 7703 was an action for a declaratory judgment, asking the rights relative to the contract be decided. T. M. Ingersoll, Declaratory Judgments, 29 Iowa Law Review 62, 64. The now plaintiffs ask that we declare the contract invalid, that the district is not one established by mutual agreement as a result of said contract, and that they be allowed to reclassify and reassess the land in the district without regard to the contract. The then plaintiffs asked the exact reverse, that the same contract be declared valid and that assessments other than as provided in the contract be forever enjoined. Inherent in the injunction in case number 7703 is the conclusion of law that the district was established by mutual agreement. The petition alleges:

"That under the provisions of this agreement, the Green Bay Levee and Drainage District was established, the levees constructed, the work accepted by the Board of Supervisors, * * *."

■ This allegation was necessary to and is the basis for the injunction. A mere allegation or finding the contract was valid as between the parties would not have sustained the injunction, or in any way served as a basis to enjoin future assessments by the governing body of the district. For a decree or judgment in a default case to be binding as a prior adjudication, it is only necessary, in addition to the elements above pointed out, that the allegations of the petition support the decree or judgment. The defendant in such an action has been afforded a full opportunity to contest such issue or issues as to all defenses he may have to the issues presented. What was decided is determined by the provisions of the decree supported by the petition. Res judicata cannot be avoided by failing to appear or plead. Lynch v. Lynch, 250 Iowa 407, 94 N.W.2d 105; Shirland v. Union National Bank, 65 Iowa 96, 21 N.W. 200; 50 C. J. S., Judgments, section 706, page 163; 30A Am. Jur., Judgments, section 226, pages 297, 298; and annotation, 128 A. L. R. 472.

Plaintiffs argue there is no identity of subject matter in

this and the prior action, and that the basis for the prior decision is not known. They base this on the allegations of the petition, in addition to the contract. As above indicated they are that the 1928 assessment included land outside of the district, was contrary to statute and no notice was given. These issues relate only to the 1928 assessment, not to the injunction relating to future assessments other than as provided in the contract. Here plaintiffs rely on Band v. Reinke, 230 Iowa 515, 298 N.W. 865; State ex rel. Havner v. Associated Packing Co., 216 Iowa 1344, 249 N.W. 761, 90 A. L. R. 1339; and Matson v. Poncin, 152 Iowa 569, 132 N.W. 970, 38 L. R. A., N. S., 1020. The Associated case does not touch the matters urged here, the issue claimed was not raised in the former action. Band and Matson cases refer to multiple defenses and that it must appear the particular matter was passed on in the prior suit. The reference there is to collateral estoppel, the second of the two situations wherein the doctrine is applicable as pointed out above. As above indicated we hold this is the same cause of action, collateral estoppel is not involved. See Lynch v. Lynch, supra.

III. Plaintiffs contend they are not in privity with the board of supervisors in 1930. We have examined the authorities cited by them but do not find they fully reach the question before us. Privity here is established by statute. Section 455.98, Code of Iowa, 1958, and all prior Codes since the district was established provide:

"In all actions * * * affecting the district, the board of supervisors shall be a proper party for the purpose of representing the district and all interested parties therein, other than the adversary parties, and the employment of counsel by the board shall be for the purpose of protecting the rights of the district and interested parties therein * * *."

The present board of trustees are the successors in office of the old board, section 462.27, Code of Iowa, 1958, and section 7700, Code of Iowa, 1927, and all interested parties in the district were represented. Chicago, B. & Q. R. Co. v. Board of Supervisors, 206 Iowa 488, 221 N.W. 223. Interested parties might have intervened but intervention is not necessary for

them to be bound by the decree, the statute provides that they are represented.

IV. Plaintiffs' contention of fraud and collusion in the obtaining of the decree in case number 7703 is based on the following: During the pendency of the action a board of trustees was elected to manage and control the district. The record as stipulated shows these trustees to have been such as of August 2, 1930, and they were not shown to have been substituted for the supervisors nor that they took part in the action as trustees. One of the trustees, H. W. Peel, was a plaintiff in that action, as was his wife. William Patterson was the son of one of the plaintiffs and had purchased one acre of high tax land so he could be elected trustee from that district. And the same firm of attorneys, Herminghausen & Herminghausen, represented the plaintiffs in case number 7703 and were attorneys for the district at all times. H. W. Peel was called by the plaintiffs in this action and testified that he was a trustee about five or six years, he could not remember when, and at the time he was a trustee the above mentioned attorneys were attorneys for the trustees. William Patterson was also called by plaintiffs. He testified he was one of the original trustees, that his father owned five cent land at the time of his death, that his father was a plaintiff in the prior action and the above mentioned attorneys were attorneys for the district when he was trustee, "Any time you had a Trustee meeting he would be there", and that he had obtained one acre of high tax land to be elected from that district. This, together with the judgment and pleadings in case number 7703, is all of the evidence touching on fraud or collusion. This evidence is as consistent with a good faith determination, by the supervisors and the trustees after their election, that there was no good and adequate defense to the action, as it is with bad faith, fraud and collusion. On this issue plaintiffs have the burden of proof. Certainly the evidence is not clear and convincing. The fact the examination of the former trustees was so limited does not aid plaintiffs. In support of their position plaintiffs cite, Kane & Co. v. Independent School District of Rock Rapids, 82 Iowa 5, 47 N.W. 1076; Lindsay v. Allen, 112 Tenn. 637, 82 S.W. 171; and People

ex rel. Childress v. Illinois Central Railroad Co., 298 Ill. 516, 131 N.E. 624. They apparently contend a default judgment cannot conclude the rights of the public. The closing sentence of the quotation set out by plaintiffs from the Tennessee case is, "* * * In short, before the rights of the public are concluded, there must be a reasonably fair presentation of the case to a court of competent jurisdiction, and a consideration and determination of the matter by the court." (Page 657 of 112 Tenn., page 175 of 82 S.W.) This requires every suit against a public or quasi-public corporation to be actually tried. The Kane case does not so hold, nor do we. Edmundson v. Independent School District of Jackson, 98 Iowa 639, 646, 67 N.W. 671, 60 Am. St. Rep. 224; Schubert v. Andrew, 205 Iowa 353, 361, 218 N.W. 78; and Rankin v. Chariton, 160 Iowa 265, 139 N.W. 560, 141 N.W. 424.

All of the matters urged here for relief by plaintiffs, except change of circumstances, constitutional questions, and reclassification of the land according to benefit, have been decided by the decree in case number 7703. This includes the pivotal question of the establishment of the district by mutual consent and all incidental reasons urged as rendering the contract invalid.

V. Plaintiffs contend the contracts are prohibited by Iowa Constitution, Article I, section 24, from running a period longer than twenty years. Section 24 provides "No lease or grant of agricultural lands, reserving any rent, or service of any kind, shall be valid for a longer period than twenty years." This defense, of course, could not have been urged in 1930. However, plaintiffs cite no authorities, and we find none, indicating the five cent contract or the Hyter contract could be construed as a lease or grant. A lease or grant of agricultural land is a contract for the possession and profits of land. City of Des Moines v. City of West Des Moines, 239 Iowa 1, 14, 30 N.W.2d 500, 507; Des Moines County Agricultural Society v. Tubbesing, 87 Iowa 138, 54 N.W. 68; and 51 C. J. S., Landlord and Tenant, section 202, page 803.

VI. The fact that most of plaintiffs have acquired their high tax land as a result of tax sales since the 1930 decree is urged both as a change in circumstances and to show a new

chain of title has been created free from any prior restrictions or covenants, and therefore the land in the district may now be reclassified. There is no question but the tax title starts a new chain of title free from covenants prior to July 4, 1937, and subject to restrictive covenants since that date. This does not answer the problem here. We have been cited to no authority for the proposition a tax sale takes such land out of the municipal or quasi-municipal corporation of which it is a part or relieves it from the payment of taxes assessed thereafter and we believe there are none. Our situation here is this, in 1916 the board of supervisors established a district, whether it was by mutual consent or on notice was settled in the 1930 decree, if that question is not laid to rest by that decree, it is barred by laches. State v. Livingston, 164 Iowa 31, 41, 145 N.W. 91; State ex rel. West v. Des Moines, 96 Iowa 521, 534, 65 N.W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381; Thompson v. Mitchell, 133 Iowa 527, 110 N.W. 901; Lincoln v. Moore, 196 Iowa 152, 194 N.W. 299; Whisenand v. Van Clark, 227 Iowa 800, 288 N.W. 915; and Wilcox v. Marshall County, 229 Iowa 865, 294 N.W. 907, 297 N.W. 640. The person who did not sign the contract had the statutory right to appeal the establishment of the district to the district court. Sections 1989-a6, 1989-a11, 1989-a14, Code of Iowa, Supplement 1913; and section 455.92, Code of Iowa, 1958. A period of forty years has elapsed during which time the district has operated as one established by mutual agreement and such person must be held to have acquiesced in the establishment of the district. The plan of assessments set forth in the contract made part of the proceedings establishing the district has been followed during all of this time, except for the assessment of 1928 enjoined by the 1930 decree. When grantors of the individual plaintiffs purchased at tax sales all of these matters were of record, as it was when these plaintiffs purchased the land. The tax sales do not have the effect claimed for them.

VII. The last proposition is that land in a drainage district is always subject to reclassification. This is true of a district established by petition and notice. However, since this action was commenced in 1956, and before any steps were taken

or resolutions for reclassification made by the trustees, the Fifty-seventh General Assembly amended section 455.56, Code of Iowa, 1954, by adding thereto, "Except districts established by mutual agreement in accordance with section 455.152, Code 1954, * * *" and repealed section 455.72, Code of Iowa, 1954, relating to reclassification and enacted in lieu thereof a similar section relating to reclassification containing the exception, "* * * except districts established by mutual agreement in accordance with section 455.152, Code 1954, * * *." The trustees did on May 5, 1958, after the effective date of the enactments of the Fifty-seventh General Assembly, adopt the resolution attached to the petition as Exhibit "B". The plaintiffs do not contend the legislature may not regulate districts established by mutual consent but that the enactments of the Fifty-seventh General Assembly are unconstitutional to the extent they allow private parties by contract to establish the assessment on lands of third parties. Actually, this argument is answered by the holding the district was established by mutual agreement and those not signing have acquiesced in the mutual agreement. At all times the parties to the agreement could fix the amount of the assessment and the time when the same would be paid. The board was to establish the district, have complete jurisdiction and order such procedure as may be necessary to carry out the object, purpose and intent of such agreement. Section 1989-a28, Code of Iowa Supplement 1913. When this section was recodified, now sections 455.152, 455.153, 455.154 and 455.155, the general provisions are retained and section 455.155 provides the board was to carry out the provisions of the agreement in the same manner as in districts established on petition "except as in said mutual agreement otherwise provided." It is apparent the legislature intended the residents of the district could set up the district and arrange for the payment of construction and maintenance as such persons agreed. If the right of reclassification was to be retained the parties could have so proceeded. This does not constitute an unconstitutional delegation of the taxing power.

We have examined all of the authorities cited by plaintiffs but do not find they reach the question of a district established by mutual agreement. The authorities cited dealing with drain-

age districts relate to those established on petition and notice.

The decree of the trial court is affirmed and we have determined the question of the right to reclassify and consequently raise the amount of assessments on the five cent land against plaintiffs.

Costs are taxed to plaintiffs except printing costs in excess of $1.50 per page.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.