**IN THE COURT OF APPEALS OF IOWA**

No. 15-2032
Filed December 21, 2016

**PIEPER, INC. and MEP Co.,**
        Plaintiffs-Appellants,

**vs.**

**GREEN BAY LEVEE AND DRAINAGE DISTRICT NO. 2,**
        Defendant-Appellee.
_____

Appeal from the Iowa District Court for Lee (North) County, John M. Wright, Judge.

Pieper, Inc. and MEP Co. appeal from the district court's ruling rejecting claims the drainage district improperly classified and assessed annexed drainage district landowners. **AFFIRMED.**

Nicholas D. K. Petersen and Robert S. Hatala of Simmons Perrine Moyer Bergman, P.L.C., Cedar Rapids, for appellants.

Wm. Scott Power of Aspelmeier, Fisch, Power, Engberg & Helling, P.L.C., Burlington, for appellee.

Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

Pieper Inc. and MEP Co. appeal from the district court's rulings rejecting claims the drainage district improperly classified and assessed district landowners. Our review is limited to whether the Green Bay Levee and Drainage District No. 2 Board of Trustees acted illegally or in excess of its jurisdiction. Because Pieper has not established that the board acted illegally or in excess of its jurisdiction, we affirm.

**I. Background Facts and Proceedings.**

Michael Pieper is the owner of Pieper, Inc. and MEP Co. He also was a member of the Green Bay Levee and Drainage District No. 2 (Green Bay District) Board of Trustees at all relevant times in this case.

The Green Bay District was formed in 1916 and encompasses land in Lee County located along the Mississippi river. In 1916, the Mississippi River Power Company and landowners within an area known as the Green Bay Bottoms signed an agreement to establish a levee and drainage district. The document notes "proceedings for the establishment of a levee and drainage district in Green Bay Township, Lee County, Iowa, are now pending before the Board of Supervisors." The parties acknowledged that the farmers had filed remonstrances (protests) against establishing the district but had come to acceptable terms. In determining damages to the farmers, the agreement references "Title X, Chapter 2-A of the Iowa Code Supplement 1913, as amended." Under the 1916 agreement, the power company was to pay the "entire cost" of the proposed improvement, and the farmers would pay an annual

assessment of five cents per acre for maintenance of the district upon "completion of the construction of the proposed improvement." However,

> if the Mississippi River Power Company, or any agent or employe[e] thereof, shall hereafter acquire any lands within the proposed levee and drainage district owned by any Green Bay Farmer who is a party to this agreement, that then the agreed annual assessment of five (5¢) cents per acre shall no longer be applicable, but such lands shall then and thereafter be subject to annual assessments for maintenance and operation proportionate to the benefits derived by them from the district. This agreement shall run with such lands.

In a prior suit by the trustees of the drainage district, the Green Bay District asserted the 1916 agreement and the five-cent-assessment limitation were not binding. *Trustees of Green Bay Levee & Drainage Dist. No. 2 v. Alexander*, 108 N.W.2d 593, 596 (Iowa 1961). The supreme court determined the matter had been determined by way of a 1930 default decree enjoining the collection of assessments in excess of the agreement. *Id.* at 598. The supreme court wrote:

> A period of 40 years has elapsed during which time the district has operated as one established by mutual agreement and such person must be held to have acquiesced in the establishment of the district. The plan of assessments set forth in the contract made part of the proceedings establishing the district has been followed during all of this time, except for the assessment of 1928 enjoined by the 1930 decree. When grantors of the individual plaintiffs purchased at tax sales all of these matters were of record, as it was when these plaintiffs purchased the land. The tax sales do not have the effect claimed for them.
>     The last proposition is that land in a drainage district is always subject to reclassification. This is true of a district established by petition and notice. . . . *Actually, this argument is answered by the holding the district was established by mutual agreement and those not signing have acquiesced in the mutual agreement.* At all times the parties to the agreement could fix the amount of the assessment and the time when the same would be paid. *The board was to establish the district, have complete jurisdiction and order such procedure as may be necessary to carry*

> *out the object, purpose and intent of such agreement.* Section 1989–a28, Code of Iowa, Supplement 1913. When this section was recodified, now sections [468.142, 468.143, 468.144, and 468.145], the general provisions are retained and section [468.145] provides the board was to carry out the provisions of the agreement in the same manner as in districts established on petition "except as in said mutual agreement otherwise provided." *It is apparent the legislature intended the residents of the district could set up the district and arrange for the payment of construction and maintenance as such persons agreed.* If the right of reclassification was to be retained the parties could have so proceeded. This does not constitute an unconstitutional delegation of the taxing power.
>
> We have examined all of the authorities cited by plaintiffs but do not find they reach the question of a district established by mutual agreement. The authorities cited dealing with drainage districts relate to those established on petition and notice.

*Id.* at 600-01 (emphases added).

The present litigation arose after a recent improvement to the Mississippi River levee and a proposal to construct a large fertilizer plant on land benefited by the improvement. Iowa Fertilizer Company (IFC) began construction of the fertilizer plant on a site that is adjacent to land within the Green Bay District. The Green Bay District believed IFC benefited from the drainage district's purpose, and by August 30, 2012, the drainage district began discussing the annexation of IFC property, as well as other area property believed to benefit.

The annexation was officially proposed the following month. The Green Bay District hired an engineering firm to prepare a proposed annexation plan. The engineering report was received in 2013.

At a special meeting held September 12, 2013, the Green Bay District Board of Trustees appointed three commissioners to "assess benefits and classify the lands" of the property to be annexed. The board also scheduled a public hearing on the issue of proposed annexation for November 21, 2013.

Notice of the November meeting was sent to affected landowners and published in a local publication. The landowners were informed they must make their objections in writing prior to the scheduled hearing. Pieper Inc. and MEP Co. (hereinafter collectively referred to as Pieper) objected to the annexation.

The engineering report indicated over 1100 acres were benefiting from the drainage district and should be annexed and assessed, it also noted some properties were being assessed that were not in the district, some properties had originally been included in the district but should not be, and other properties were included and had not before been assessed. Section 4.2 of the engineering report states:

> The current method of assessment employed by the District varies throughout the District. There are four different assessment rolls. Almost every parcel appears on the 0.84 [of drainage district bond] roll in addition to appearing on either the 5¢ roll, the 2% roll, or the 55% roll. The 5¢ roll (Area 1) represents most of the higher elevated parcels in the northwest portion of the District. The 55% roll (Area 3) represents the majority of the other parcels being assessed. The 2% roll (Area 2) represents several other parcels in the northwest portion of the District.

Two of the three trustees voted to annex the land set forth in the map within the engineering report and to levy a tax using the assessment method previously used. Michael Pieper objected, asserting the assessment method did not conform to the method prescribed by Iowa Code section 468.39 (2013).

After the November 21 meeting, the board requested that the commissioners reconsider some of the properties to be assessed. Minor changes were proposed. At a meeting on December 19, 2013, the trustees passed a resolution, as amended in handwritten form, which "rescinded" the November 21, 2013 resolution regarding the "partial assessment roll," i.e., the list

of annexed properties and assessments. The trustees then adopted the partial assessment roll compiled after that November meeting. This amended roll involved a lower assessment for six landowners.

On December 20, 2013, and January 17, 2014, Pieper filed writs of certiorari in the district court, asserting the annexation and assessment by the board of trustees was illegal in that there was not proper notice given to rescind the November 21, 2013 assessment roll and adopt the revised assessment roll on December 19. Pieper also asserted the board of trustees used a method of assessing the annexed properties not contemplated by Iowa Code section 468.39.[1]

---

[1] The two matters were consolidated. Green Bay District filed a motion to dismiss, contending Pieper's exclusive remedy was by notice of appeal filed within twenty days of the board's final decision. *See* Iowa Code §§ 468.83(1) ("Any person aggrieved may appeal from any final action of the board in relation to any matter involving the person's rights, to the district court of the county in which the proceeding was held."), 468.84 ("All appeals shall be taken within twenty days after the date of final action or order of the board from which such appeal is taken by filing with the auditor a notice of appeal, . . . . This notice shall be accompanied by an appeal bond with sureties to be approved by the auditor . . . ."), 468.96 ("The remedy by appeal provided for in this subchapter, parts 1 through 5, shall be exclusive of all other remedies.").

The district court concluded a writ of certiorari pursuant to Iowa Rule of Civil Procedure 1.1401 was available because Pieper asserted the board "exceeded proper jurisdiction or otherwise acted illegally." *See* Iowa R. Civ. P. 1.1403 ("The writ shall not be denied or annulled because plaintiff has another plain, speedy or adequate remedy; but the relief by way of certiorari shall be strictly limited to questions of jurisdiction or the legality of the challenged acts, unless otherwise provided by statute."). The parties do not challenge that ruling on appeal.

In *Goeppinger v. Boards of Supervisors of Sac, Buena Vista, & Calhoun Counties*, 152 N.W. 58, 61 (Iowa 1915), the supreme court noted that in drainage district matters, appeal and certiorari are not necessarily inconsistent remedies.

> The remedies are consistent as to some questions; for instance, the question of jurisdiction may be raised on appeal, and if there is no jurisdiction, or the lower tribunal has exceeded its proper jurisdiction, the matter may be raised by certiorari. Under the statute, certiorari will lie where the proper jurisdiction has been exceeded, and where there is some illegality for which there is no other plain, speedy, and adequate remedy. The illegality just referred to is something more than a mere error and less than jurisdiction. It is not always easy to make the

After a hearing, the district court concluded that the 1916 agreement—establishing a new drainage district and determining the assessments for the properties—overcame the scale-of-benefits method provided for in Iowa Code section 468.39. The district court wrote:

> At first blush it appears this agreement would fall under Title X, Chapter 2-A, section 1989-a28, Iowa Code (1913). That particular code section was in effect at the time of the landowners' agreement. It now appears in sections [468.]142 to [.]144, Iowa Code (2015). The statutes state that landowners may establish a levee and drainage district by mutual agreement. It may include the classification of the lands to be benefited, but it does not require the landowners to use the benefit scale method of determining this. The law also requires the board of supervisors to establish the district and do what is, "required or necessary to carry out the object, purpose and intent of such agreement." In other words, the board of [trustees] must not change the agreement in any way, including the method of the classification of the lands to be benefitted.
>
> However, the agreement references in paragraph one that proceedings to establish the drainage district, "are now pending before the Board of Supervisors." Paragraph 2 references the farmers' objections. So, it must be assumed that one or more landowners petitioned the board of supervisors for the district and that other landowners objected thereto. The Mississippi River Power Company, obviously wanting to ensure the district would be established, reached a settlement with the objecting landowners. Part of that settlement was the five cent per acre annual assessment. Unfortunately, we do not have the opportunity to consider any other documents from this early process to help us better understand how the classifications and assessments came about.

The district court ruled the commissioners carried out their duties, the board of trustees' decisions to classify and assess were based on the 1916 agreement, and the board of trustees "acted in conformity with the original

---

application. There may be instances where, in the same case, some questions might be reviewable by appeal and others by certiorari.

*Goeppinger* 152 N.W. at 61; *see also W. Davenport Improvement Co. v. Theophilus*, 158 N.W. 689, 691 (Iowa 1916). Because the question here is the legality of the board's assessment methodology, we conclude the matter was reviewable by writ of certiorari.

establishment of the drainage district when it used the same means of classifying and assessing the new [annexed] land."

The district court concluded the Green Bay District did not act illegally:

> Primary is the fact that this carried out the original intent of the landowners who formed the drainage district in 1916. Furthermore, it is consistent with the classification in place for nearly 100 years. The trustees determined the original classification method was the fair manner by which to classify newly annexed land. Using the benefit scale method would create a second and inconsistent means of classification. The decision was not made arbitrarily or in a capricious manner. Every landowner would be classified in the same way.

Because it concluded no illegality had occurred, the district court annulled the writ of certiorari.

Pieper appeals.

## II. Scope and Standard of Review.

We review a certiorari action for the correction of errors at law. *Meyer v. Jones*, 696 N.W.2d 611, 613-14 (Iowa 2005). When reviewing for correction of errors at law, we are bound by "the district court's well-supported factual findings" but not its legal conclusions. *State Pub. Def. v. Iowa Dist. Ct. for Clarke Cty.*, 745 N.W.2d 738, 739 (Iowa 2008) (quoting *State Pub. Def. v. Iowa Dist. Ct. for Johnson Cty.*, 663 N.W.2d 413, 415 (Iowa 2003)).

## III. Discussion.

"A writ of certiorari lies where a lower board, tribunal, or court has exceeded its jurisdiction or otherwise has acted illegally." *State Pub. Def. v. Iowa Dist. Ct. for Story Cty.*, 886 N.W.2d 595, 598 (Iowa 2016) (citation omitted); *see also* Iowa R. Civ. P. 1.1401. "Illegality exists when . . . the [tribunal] has not

properly applied the law." *Iowa Dist. Ct. for Story Cty.*, 886 N.W.2d at 598 (citation omitted).

On appeal, Pieper does not challenge the annexation of additional lands. The present suit asserts that even though the district was created by mutual agreement, land annexed into the district is subject to statutory assessment provisions applicable to the establishment of "*an* original district," that is, a district established by petition and notice.

At the time the Green Bay District was established, the Iowa Code provided:

> **Additional lands—procedure for annexation.** That after the original establishment of a drainage district, as in this chapter provided, if the said board is satisfied that additional lands should be included within any drainage district, and that said lands are benefited by the improvement therein, and that said lands should have been included in said original district, then, in such case, the board may order the engineer to make a plat of said lands, with the elevations thereof, and report thereon; and thereupon if said report be in favor of including additional lands, which shall be particularly described in the report, *said board shall proceed in such matter as to said proposed annexed territory as in* **the** *original establishing of such district*, including the fixing and levying of the special tax for benefits, and thereafter the said annexed territory shall be a part of said district, and governed in all respects as lands within the original district; or said annexation may be made and brought under the jurisdiction of the board for all of said purposes upon the petition of the owners of all the lands to be annexed.

Iowa Code § 1989-a54 (1913 Supp.) (emphasis added).

The current statutory procedures to annex land to a drainage district are found in Iowa Code sections 468.119 through 468.121. Section 468.119 states that the board "may adopt, with or without a petition from owners of the proposed annexed lands, a resolution of necessity for the annexation" and appoint an engineer that is to "examine such additional lands, to make a survey and plat

thereof showing their relation, elevation, and condition of drainage with reference to such established district," and prepare a report "as in this subchapter . . . provided for *the original establishment* of such district." (Emphasis added.)

Section 468.120 states:

> If the report recommends the annexation of the lands or any portion of them, the board shall consider the report, plats, and profiles and if satisfied that any of the lands are materially benefited by the district and that annexation is feasible, expedient, and for the public good, it shall proceed in all respects as to notice, hearing, appointment of appraisers to fix damages and as to hearing on the annexation; and if the annexation is finally made, as to classification and assessment of benefits to the annexed lands only, to the same extent and in the same manner as provided in the establishment of *an original district*. However, the annexation and classification of the annexed lands for benefits may be determined at one hearing. Those parties having an interest in the lands proposed to be annexed have the right to receive notice, to make objections, to file claims for damages, to have hearing, to take appeals and to do all other things to the same extent and in the same manner as provided in the establishment of *an original district*.

(Emphasis added.)

Section 468.121 continues,

> After annexation is made the board may levy upon the annexed lands an assessment . . . . If the finding of the board as provided in section 468.119 was based on the fact that additional lands are now benefited by virtue of the repair, improvement, or the change of the topographical conditions made to the district and were not benefited by the district as originally established, then the board shall levy upon the annexed lands *an assessment sufficient to pay their proportionate share of the costs of the repair or improvement which was the basis for the lands being annexed*.

(Emphasis added.)

Because Pieper has not challenged the annexation on appeal, he has acquiesced in or waived his challenge to both the district's authority and the act of annexation. *See Alexander*, 108 N.W.2d at 596 (concluding the failure to

appeal the establishment of the district by a person who failed to sign the original agreement may constitute acquiescence in the agreement); *Kelley v. Drainage Dist. No. 60*, 138 N.W. 841, 845-46 (Iowa 1912) (finding evidence that the land would not benefit was not competent in an appeal of the assessment).

*A. Statutory notice.* Pieper contends the drainage district board of trustees acted illegally in rescinding and then approving an assessment without statutorily-required notice. Pieper complains that no notice was given before the board voted on December 19 to adopt the revised partial assessment roll. *See Thompson v. Joint Drainage Dist. No. 3-11*, 143 N.W.2d 326, 331 (Iowa 1966) ("Failure to provide hearing and give notice as required by statute voids the entire assessment.").

Green Bay District asserts proper notice was given prior to the November 21, 2013 meeting at which the annexation and assessment was to be determined. There were nine objections filed. At the regular meeting of the board of trustees on November 21, 2013, which followed the public hearing, the board adopted the proposed Partial Assessment Roll and determined that annexation should proceed. The board then resolved to accept the assessment roll recommendations submitted by the commissioners, which might be modified by the board of trustees in its discretion after public hearing. The resolution further provided that the Partial Assessment Roll assessments be levied against the lands being annexed into the district.

Green Bay District contends that after posting an agenda notifying the landowners that an annexation assessment adjustment would be considered at its December 19, 2013 meeting, the Partial Assessment Roll was "revised

slightly" based on the recommendation of the commissioners received December 17, 2013. The assessments levied against six parcels within the annexed area were lowered and a column "R" was added to the chart "for the benefit of the Lee County Auditor's office." The district maintains any December 19 revisions to the Partial Assessment Roll adopted on November 21, 2013, "were minimal and inconsequential" to Pieper.

We do not find any support for the requirement of a subsequent notice to be served on affected landowners for the December 19 public hearing. Pieper does not challenge the notice given for the November 21 hearing, and the board made clear at the November 21 hearing that its work was not yet completed and there could be modifications at the December 19 hearing. "The adjournment of the board from the day fixed in the notice to a subsequent date for further consideration did not deprive the board of jurisdiction" or require further notice. *Gary v. Anderson*, 118 N.W. 526, 527 (Iowa 1908). Rather, the landowner was bound to take notice of the subsequent proceedings. *Id.*

We also note, Michael Pieper—owner of both Pieper Inc. and MEP Co.— was a trustee on the board of the Green Bay District at all times relevant here. Pieper had actual notice of and participated in all actions taken by the board of trustees. There is no illegality by the board in this regard, and Pieper's failure-of-notice claim fails.

### B. Assessment method.

**1. Pieper's position.** Pieper asserts that under section 468.120, the assessment of the annexed land must be by the method used "in the

establishment of an original district," arguing the scale-of-benefits method of assessment found in Iowa Code sections 468.38 and 468.39 is required.

Iowa Code section 468.38 provides in part:

> When a levee or drainage district has been located and finally established or, unless otherwise provided by law, when the required proceedings have been taken . . . to annex additional lands to a district, . . . the board [of trustees of the drainage district] shall appoint three commissioners to assess benefits and classify the lands affected by the improvement . . . .

Section 468.39 provides:

> At the time of appointing said commissioners, the board shall fix the time within which said assessment, classification, and apportionment shall be made . . . . Within twenty days after their appointment, [the commissioners] shall begin to inspect and classify all the lands within said district, or any change, extension, enlargement, or relocation thereof in tracts of forty acres or less according to the legal or recognized subdivisions, *in a graduated scale of benefits* to be numbered according to the benefit to be received by each of such tracts from such improvement . . . . *The lands receiving the greatest benefit shall be marked on a scale of one hundred*, *and those benefited in a less degree with such percentage of one hundred as the benefits received bear in proportion thereto*. They shall also make an equitable apportionment of the costs, expenses, fees, and damages computed on the basis of the percentages fixed.

(Emphasis added.)

Pieper asserts the Green Bay District acted illegally because the board of trustees did not use the scale-of-benefits method. Pieper's counsel argued during oral argument that the annexed land can be classified separately much like an intercounty drainage district using the scale-of-benefits method. Pieper also contends there is no known rational basis for the current assessments as shown in the engineer's report and, thus, no consideration of the benefits or

apportionment of the costs was made "despite the Board having specifically recognized that it must do so at its September 12, 2013, special meeting."

**2. Green Bay District's position.** The Green Bay District, on the other hand, asserts section 468.39 is not applicable. It argues, "Nothing in Chapter 468 provides guidance to commissioners or Trustees as to how to assess benefits to land annexed into a levee and drainage district originally formed by agreement." The drainage district contends the method adopted was in keeping with that already in use. It asserts the adopted assessments in the annexed land graduated from higher assessments closer to the levee where the landowner received more flood protection and drainage, to a lower assessment where the ground was higher and received fewer benefits. The commissioners then compared the assessments of district land to adjacent parcels to be annexed and calculated "assessments for benefits based on the benefits received by the landowners based on their proximity to the levee and the drainage benefits received. In this fashion the benefits received by the annexed property would be similar to the benefits received by properties already within the levee and drainage district." The chair of the board of trustees testified at trial that while the method and resulting "Partial Assessment Roll" was complex and difficult to understand, the board believed the assessments as calculated were "fair and equitable" to annexed landowners. The Green Bay District argues the assessment is in accord with section 468.46, which provides:

> At the time fixed or at an adjourned hearing, the board shall hear and determine all objections filed to said report [of the commissioners] and shall fully consider the said report, and may affirm, increase, or diminish the percentage of benefits or the apportionment of costs and expenses made in said report against

any body or tract of land in said district *as may appear to the board to be just and equitable.*

(Emphasis added.)

Here, the engineer's report states:

> A study of the current Assessment Roll for Green Bay Levee & Drainage District No. 2 was performed. This study revealed that there are 15 parcels inside the District that are not paying assessments and two parcels outside the District that are paying assessments. These parcels are listed in Appendix J. Additionally, several inconsistencies were found with the assessments being paid by some parcels and the acreage listed on the Assessment Roll for several other parcels. These parcels are also listed in Appendix J. The updated assessment boundaries on the District map are shown on Sheet 4 included in Appendix H. This map also includes landowners by parcel, acreage, and assessment per acre for each parcel. Where the data could not fit on the drawing due to parcel size, see the supplemental ownership information included as Appendix K.
>
> The current method of assessment employed by the District varies throughout the District. There are four different assessment rolls. Almost every parcel appears on the 0.84 roll in addition to appearing on . . . the 5¢ roll, the 2% roll, or the 55% roll. The 5¢ roll (Area 1) represents most of the higher elevated parcels in the northwest portion of the District. The 55% roll (Area 3) represents the majority of the other parcels being assessed. The 2% roll (Area 2) represents several other parcels in the northwest portion of the District.
>
> The District currently assesses several parcels belonging to the Burlington Northern Santa Fe Railroad. However, there are several parcels to be annexed that also belong to the railroad. Iowa Code section 468.42 addresses the assessment of railroad property . . . .
>
> . . . .
>
> It is recommended that the District consider employing an updated method of assessment that would assess parcels based on the amount of benefit received, rather than the varied method of assessment currently in use. The amount of benefit received could be based on elevation, drainage provided, flood protection, and soil erosion protection. It would be worthwhile for the District to also consider assessing any public highways and state-owned lands included within the District as described in Iowa Code section 468.43. An example of an updated assessment methodology is included as Appendix L.

It is recommended that the Board adopt a Resolution of Necessity and order annexation of these lands currently receiving benefits from the District, listed in Appendix 1 and shown on Sheet 3 in Appendix F.

The engineering firm also sent a letter stating in part:

It has been a challenging process to ascertain the basis for assessment that was used nearly 100 years ago.
. . . .
It was the general consensus as well that the new parcels coming into the district should be assessed on the 2% roll as most of the surrounding ground is on the 2% roll. We still do not know the actual basis of the 2% and 5% roll, and no further information was provided by the Lee County Auditor. Historic index cards provide the numbers, but they do not reveal the basis of the numbers.
In our final meeting, we undertook the task of going through the 2% roll and 5% roll. All 2% roll parcels were assessed at $5 regardless of Units Assessed. Therefore, we set the value of "Units Assessed" to "1" for those parcels. We analyzed the 55% roll and the parcels surrounding the area to determine a fair standard considering elevation. A factor of 550 for "Units Assessed" for a standard 40 acre parcel was determined to be the most equitable number to use, and this is documented in the notes.
We have not undertaken any work related to assessing roads, highways, pipelines, or other infrastructure that may be present in the District and benefited by the levee and drainage facilities. That is beyond the scope given to the present assessment commissioners.
Therefore, the spreadsheet and notes enclosed represent the results of our work to fairly and appropriately assess the parcels needing assessment. The maps we used are included for your reference. Please review these documents carefully so that we can formally present them to the levee and drainage trustees at their October 24th meeting. It is expected that they will set a public hearing date where we will be called to present our findings and answer questions prior to their adoption of our numbers.

**3. Analysis.** We acknowledge Iowa Code section 468.120 provides annexed land must be annexed "to the same extent and in the same manner as provided in the establishment of *an* original district." Iowa Code § 468.120 (emphasis added). But we believe this language, upon which Pieper relies, is

premised on the original lands in the original district being classified and assessed upon the same statutory methodology. And if this district had been created by petition, we would agree with Pieper. But a mutually agreed upon district is a different animal.

There is no dispute that a district created by mutual agreement is permitted to establish its own method of classification and assessment. *See* Iowa Code § 468.143(5); *see also Alexander*, 108 N.W.2d at 601 ("At all times the parties to the agreement could fix the amount of the assessment and the time when the same would be paid."). And, in *Alexander*, our supreme court determined the district could not reclassify the lands because that authority was not authorized in the original agreement. *See* 108 N.W.2d at 601.

The original agreement simply provided that landowners would be assessed five cents per acre. Prior to Green Bay District's annexation, the assessment of the district land appears to have evolved into some sort of assessment based in part upon benefit, although there is no record evidence of the basis for all the various current assessments. Clearly the methodology used by the district in the past has not been entirely consistent with the method provided in Iowa Code sections 468.38 and 468.39. However, we can conclude the assessments made after the execution of the agreement either constituted a modification of the original agreement or the drainage district landowners acquiesced in the subsequent assessments or waived their right to challenge them. *See* Iowa Code § 468.96; *see also* footnote 1 herein.

Here, if the newly annexed lands are classified and assessed pursuant to the statutory method as sought by Pieper, and the original lands in the district are

assessed by the past methods, two separate methods of classification and assessment would exist within the same district. This could result in two adjoining properties with similar characteristics and benefits received from the district being classified and assessed differently within the same district. We find such a result clearly contrary to the numerous expressions in Iowa Code chapter 468 requiring all lands to be classified the same and assessed the same unless reclassified or the land has so eroded away that it can be removed from being classified. *See* Iowa Code §§ 468.49(1) ("A classification of land for drainage, erosion or flood control purposes, when finally adopted, shall remain the basis for all future assessments for the purpose of said district . . . ."), .13(3) ("If the board establishes the district as provided in section 468.22, the classification which is finally approved at the hearing by the board shall remain the basis of all future assessments for the purposes of said district as provided in section 468.49."). And there is no statutory provision authorizing annexed land to be assessed differently than lands originally included in the district. *See* Iowa Code §§ 468.120, .121. Because the original agreement did not authorize reclassification, *see Alexander*, 108 N.W. at 601, the only manner in which a different classification may be applied under these facts is if a new district is formed that includes the old district.[2] *See* Iowa Code § 468.124.

The engineer and commissioners attempted to ascertain the basis of the previously imposed assessments and made a professional recommendation on

---

[2] We acknowledge other exceptions exist within Iowa Code chapter 468, such as classifications and assessments for lateral ditches. *See* Iowa Code § 468.41.

how to equitably apply the assessments to the annexed lands. The board relied upon the expertise provided.

Classification and assessments are notoriously difficult. Our supreme court has stated, "The enterprise of quantifying and allocating special benefits conferred on affected properties is not an exact science." *Gray v. City of Indianola*, 797 N.W.2d 112, 120 (Iowa 2011). It has also been said, "Exactitude is impossible. An approximation is alone feasible." *Harriman v. Drainage Dist. No. 7-146 of Franklin & Wright Ctys.*, 199 N.W. 974, 975-76 (Iowa 1924); *see also Bloomquist v. Bd. of Supervisors*, 177 N.W. 95, 99 (Iowa 1920) ("[A]pproximation is the best that we can do in this class of cases."). Similarly, the application of past assessments to the annexed lands presents an inexact science.

In *Hicks v. Franklin County Auditor*, 514 N.W.2d 431, 435 (Iowa 1994), it was said:

> When reviewing drainage proceedings of boards of supervisors [or trustees] we have applied three principles: the drainage statutes shall be liberally construed for the public benefit; strict compliance with statutory provisions is required to establish a drainage district, while substantial compliance is sufficient as to repairs or improvements; and *the procedural requirements should not be too technically construed*.

(Emphasis added.)

Pieper would have us construe the procedural requirements too technically. After the hearing on assessments, the board "may affirm, increase, or diminish the percentage of benefits or the apportionment of costs and expenses made in said report against any body or tract of land in said district as may appear to the board to just and equitable." Iowa Code § 468.46. We agree

with the district court the Green Bay District assessed the annexed land in accordance with the agreement and previously imposed assessments and, thus, did not act illegally or in excess of its jurisdiction. Pieper does not claim he was treated inequitably by the district's methodology as compared to its application to other lands in the district.[3]

We conclude Pieper waived his right to challenge the classification and assessment methodology used by the mutually agreed upon district by his failure to appeal the annexation. He, of course, retained his right to appeal the assessments based upon principles of equity or misapplication of Iowa Code section 468.121, assuming the latter section applies to districts created by mutual agreement. But we are not persuaded he is entitled to have his land, or even all annexed land, be classified and assessed by a different methodology than all other landowners in the district under these facts. We therefore affirm.

**AFFIRMED.**

Doyle, J., concurs; McDonald, J., dissents.

---

[3] Pieper also does not contend his land should be classified and assessed by any of the alternative methods provided for levee districts in Iowa Code section 468.184

**MCDONALD, Judge.** (dissenting)

"A court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it." *Cooper v. Kirkwood Cmty. Coll.*, 782 N.W.2d 160, 164 (Iowa Ct. App. 2010). Where the district court lacks jurisdiction over a proceeding, this court lacks jurisdiction over the appeal. *See id.* at 167-68. I would dismiss this appeal for lack of subject matter jurisdiction.

The right to appeal from the action of a drainage district is provided by statute. Iowa Code section 468.84 provides:

> All appeals shall be taken within twenty days after the date of final action or order of the board from which such appeal is taken by filing with the auditor a notice of appeal, designating the court to which the appeal is taken and the order or action appealed from, and stating that the appeal will come on for hearing thirty days following perfection of the appeal with allowances of additional time for good cause shown. This notice shall be accompanied by an appeal bond with sureties to be approved by the auditor conditioned to pay all costs adjudged against the appellant and to abide the orders of the court.

"The remedy by appeal . . . shall be exclusive of all other remedies." Iowa Code § 468.96. "When interpreting a statute, we will not look beyond the express terms of the statute if the text of the statute is plain and its meaning clear." *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 519 (Iowa 2012). The text of the statute could not be clearer: any person aggrieved from a final action of a drainage district may challenge the final action by timely filing a notice of appeal with the county auditor.

The plaintiffs failed to comply with the exclusive appeal procedure. The plaintiffs did not timely file notice of appeal with the auditor. Indeed, the plaintiffs

did not file notice of appeal at all. Instead, the plaintiffs filed a petition for writ of certiorari pursuant to Iowa Rule of Civil Procedure 1.1401.

Notwithstanding the plain language of the statute, there is case authority providing a party may challenge a drainage district action by petition for certiorari where the challenged action was illegal and void. *See, e.g.*, *Voogd v. Joint Drainage Dist. No. 3-11*, 188 N.W.2d 387, 390 (Iowa 1971). I question the ongoing vitality of this line of authority or at least the scope of this line of authority. Regardless, this line of authority does not provide a basis for jurisdiction here. Controlling authority provides any challenge to the district's assessment method or amount—the issues raised in the plaintiffs petition for writ of certiorari—is not a challenge to the district's authority to act and must be mounted by appeal according to statute and not collateral attack. *See Whisenand v. Van Clark*, 288 N.W. 915, 919-20 (Iowa 1939) (holding change in assessment "was not a jurisdictional defect but a voidable act not subject to collateral attack"); *Petersen v. Sorensen*, 185 N.W. 42, 45 (Iowa 1921) ("If an improper classification were adopted, or if lands properly assessable were omitted from the levy, or if the assessment was not according to benefits or for other reasons inequitable, the remedy by appeal was sufficient and exclusive. This remedy having been provided, it must be followed. If the board of supervisors acquired jurisdiction to levy assessments, but there was an irregularity or illegality in the proceedings, relief can only be had upon appeal, and no ground for injunctive relief existed.").

For the foregoing reason, I respectfully dissent.